James P. O’Donnell, J.
Three separate article 78 proceedings were brought on before this court; one each by the Counties of Oneida, Onondaga and Erie, as well as some other townships and sewer districts within the County of Erie and the proceeding was argued before this court in Oneida County as a consolidated proceeding, upon stipulation of all parties. All three units of government challenged the Commissioner of the Department of Environmental Conservation, the Governor of the State of New York and the Budget Director of the State of New York on their failure to reimburse the said municipalities, pursuant to ECL 17-1905. All of these municipalities proceedings relate to the reimbursement of funds from the State for the operation and maintenance of sewage treatment plants in the respective municipalities.
The petitioners bring two separate proceedings. The first proceeding relates to the discrimination in rate setting between towns, counties and cities and particularly, the large cities such as New York and Buffalo, who were reimbursed in the amount of 33Vs%, while the towns and counties were receiving reimbursements at, roughly, 10.5%. The second issue raised by the petitioners was the alleged unconstitutional impoundment of seven million dollars, which was appropriated by the New York State Legislature, for the years 1976-1977.
Let us address ourselves to the first argument. ECL 17-1905 (subd 2) reads as follows: "Within the limits of the annual appropriation made by the legislature, the commissioner shall apportion and approve for payment state assistance to each municipality which, by itself or in cooperation with one or more municipalities or other governments, operates and maintains or is responsible for the payment of expenses for operation and maintenance of sewage treatment works during all or part of a fiscal year of such municipality, in accordance with qualifications for state assistance applicable to the operation and maintenance of such works * * * Such state assistance, when apportioned among the municipalities applying, shall be for not more than one-third of the amount approved by the commissioner as having been duly expended by the municipal *696 ity for such operation and maintenance during each of the three successive fiscal years of the municipality beginning with its fiscal year commencing on or after June 1, 1974”. (Emphasis supplied.)
The petitioners were informed by identical letters, dated February 26, 1976 and signed by Eugene F. Seebald, Director of the Division of Pure Waters of the New York State Department of Environmental Conservation, that: "This Department’s appropriation for State aid to municipalities for operation and maintenance of sewage treatment works is not sufficient to pay current claims at 33 (ó per cent reimbursement rate, experienced in previous years”. The letter further states that: "Because of the lack of sufficient appropriations, that [we the department] are processing all claims for municipalities whose fiscal year ends no later than the 30th day of June, 1975 at a rate of 17 per cent of the eligible operation maintenance costs”. This new rate, as was stated, would exhaust current appropriations. It is the contention of the petitioners that the commissioner’s act of setting the June 30, 1975 date, as the date in which municipalities’ fiscal years could end, was arbitrary and capricious and allowed some municipalities to qualify for the traditional 33Vs% rate as against the other municipalities. It is the contention of the petitioners that the fiscal year of the particular municipality should govern. It is the State’s position that it is the State’s fiscal year that is controlling. It is the court’s position that the commissioner’s degree of discretion is extremely limited under this particular section of the law. They may only pass judgment on whether or not the particular municipality has complied with the State regulations in order to qualify for State reimbursement. The rate would have to be applied equally among all municipalities. The department does not have the obligation to maintain reimbursement at the traditional 33 Vis % in disregard of the funds available. All agencies of the State rely upon the annual appropriation legislation to provide the necessary funds to enable them to perform their established functions and duties. Section 7 of article VII of the New York State Constitution prohibits funds from being expended in excess of the amounts appropriated and for purposes other than those specified in the appropriations bill. Once funds have been appropriated, it then is incumbent upon the agency or department to expend such funds, within the guidelines established by their respective enabling legislation and the specific appropriation act. *697 The afore-mentioned section (ECL 17-1905) does not allow the commissioner to apply varying percentage rates to different municipalities applying within the same year. "The year” is not the State’s fiscal year, nor the municipalities’ year, nor a calendar year, but is the year established by statute. Subdivision 2 of section 1263-c of the Public Health Law which became effective April 3, 1964 (L 1964, ch 329, § 2) was the original predecessor of ECL 17-1905 (subd 2). The Public Health Law, afore-mentioned, established that for the purposes of reimbursement under the statute, the year to be considered is the year commencing June 1 and ending May 31. This particular subdivision of the Public Health Law was subsequently incorporated in the Environmental Conservation Law of September 1, 1972 (L 1972, ch 664, § 17).
Although this court is well aware of the well-settled law that the construction given statutes and regulations by an agency responsible for their administration, if not irrational or unreasonable, should be upheld (Matter of Howard v Wyman, 28 NY2d 434; Matter of Mounting & Finishing Co. v McGoldrick, 294 NY 104), nevertheless the statute specifies otherwise and the court interprets the intent of this statute otherwise. It is the court’s opinion that the commissioners’ establishment of June 30, 1975 as the cutoff date on reimbursement to these municipalities involved is improper and the June 1 date, as set forth in the statute, is the proper date to establish the reimbursement rates. To do otherwise, would be arbitrary and capricious on the part of the commissioner. It is the decision of this court that the commissioner should recompute reimbursement rates to the municipalities, based on the June 1 date, as spelled out in the law and reimburse these municipalities with uniform rates within the confines of the appropriated funds. (Matter of Town of Cornwall v Diamond, 39 AD2d 762.)
We now must address ourselves to the second and more serious question of impoundment of appropriated funds by the Governor and Director of the Budget, which will have far-reaching results in our State.
The moving papers disclose that by chapter 53 of the Laws of 1976, which was approved March 30, 1976, effective April 1, 1976, that the State Legislature passed the local assistance budget. So far as the Department of Environmental Conservation budget is concerned under the pure waters program, two specific entries were set forth: one for 12 million dollars and *698 one for 14 million dollars, totaling 26 million dollars of State aid. This was verified by a letter from Burton G. Hecht, Chairman of the Ways and Means Committee of the New York State Assembly.
It also appears in the moving papers that 7 million dollars of the 26 million dollars appropriation was impounded by the Governor, apparently for the purpose of balancing the State budget. Section 20 of the State Finance Law grants to the Governor and the Executive Department the duty, powers and functions of the budget and control of the budget. Any change in the detail of the purpose for the particular appropriation shall be set forth in a bill by the Governor showing clearly what the changes are. (State Finance Law, § 25.) The Governor did not line veto any of the items in this appropriation bill of 26 million dollars, although he had such right. It is argued by the petitioners that the Governor’s act of impoundment is unconstitutional, and without authority. He had a perfect right to line veto any appropriation passed by the Legislature, but under those circumstances, the Legislature would be entitled to attempt to override his veto. By impounding the funds, he is denying the State Legislature the right to legislate appropriation bills. The court will approach this subject with proper restraint, since it is not the part of the judiciary to intervene in the affairs of the Legislature and the executive. (New York Public Interest Research Group v Steingut, 40 NY2d 250.) Section 2 of article VII of the New York State Constitution requires that' the State have a balanced budget. (Wein v State of New York, 39 NY2d 136 [Wein No. 1].) Although in the first Wein case, the court recognized the flexibility in the Constitution in that their State officials could not figure exact estimates of revenues and expenditures, nevertheless, the balanced budget was to prevent fiscal abuse. The court held in Wein No. 1 that they could not do something indirectly which is forbidden to be done directly. (Wein v State of New York, supra; People v Westchester County Nat. Bank of Peekskill, N. Y., 231 NY 465.) The court notes that the letter from the Director of the Budget, dated October 7, 1976, testifies the reducing allocations made by the State for maintenance and operation of sewage treatment plants on the basis that he had to tighten expenditure control. It is interesting to note that the director states that New York State is the only State in the Nation that provides operating support for local sewer operations. There is no showing that there was an *699 interchange of items of appropriation under section 51 of the State Finance Law. The court notes that even in that instance, there could not be an increase or a decrease of more than 5%. By the reduction of this appropriation by more than 25% of the 26 million dollars appropriated, it appears to the court that it is an attempt by executive edict to defeat the legislative intent of the law passed by the State Legislature. Although it is commendable that the Executive Department seeks to maintain fiscal responsibility, nevertheless it must be done so within the confines of the established law. Although judicial interference may be invoked, only in the narrowest of instances, the court believes that this is such a case. (Wein v Carey, 41 NY2d 498.)
The case at bar is strikingly similar to the action of the Nixon administration on a Federal level, when they attempted to impound funds appropriated by Congress. In one instance the executive sought to impound funds of the Federal Water Pollution Control Act, which was to Federally finance assistance to municipal sewage treatment works under section 207 of the act (US Code, tit 33, § 1287). The United States Supreme Court, in an opinion by Mr. Justice White, held that no such power rested in the executive, once the moneys were appropriated by the legislative branch. (Train v City of New York, 420 US 35.) A series of Federal lower court decisions held that the executive branch had no right to impound funds to defeat the legislative intent of Congress. (Campaign Clean Water v Ruckelshaus, 361 F Supp 689; Community Action Programs Executive Directors Assn. of N. J. v Ash, 365 F Supp 1355.) The reasoning behind this interpretation bears out that the legislative branch legislates and the executive branch carries out and enforces the law. (Youngstown Co. v Sawyer, 343 US 579.) If the law were otherwise, the executive branch by impounding funds could, not only limit the operation of a department or agency, but in fact, put the department or agency completely out of business, by merely denying funds.
It is the opinion of this court that the impoundment of the seven million dollars appropriated funds by the Governor and the Director of the Budget was without authority in law and that said sum should be restored to the budget of the Department of Environmental Conservation and that the moneys so appropriated should be dispersed to the municipalities entitled thereto, pursuant to law.
*700 The court notes that this appropriation would lapse on the 15th day of September, 1977, pursuant to subdivision 3 of section 40 of the State Finance Law, but it is the decision of this court that this appropriation shall not lapse, but shall be a liability of the State against this particular fund.