OPINION OF THE COURT

Per Curiam.

At point is whether the State Director of the Budget, acting as agent of the Governor, may refuse to spend $7 million appropriated by the Legislature to aid municipalities in operating and maintaining sewage treatment works. Responding to the issue, it is held that no authority inheres in the Governor under the State Constitution to impound funds appropriated by law and that the instant appropriation statute conferred no discretionary authority upon the Director of the Budget to disapprove otherwise proper.expenditures.
In this consolidated proceeding, petitioners, local municipalities and their representatives, assert that they have improperly been denied State reimbursement for the operation and maintenance of sewage treatment works.[1] Specifically, they *520 urge that the Budget Director, invoking an inherence of authority allegedly reposed in the Governor, illegally impounded $7 million out of $26 million appropriated by the Legislature for State fiscal year 1976-1977.[2] In the executive budget for that fiscal year, the Governor recommended a $12 million appropriation for the sewage works reimbursement program. During the budgetary process, the Legislature added $14 million to the recommendation and passed a total appropriation of $26 million.[3] Although the Governor possesses item veto power over appropriation measures (NY Const, art IV, § 7), he chose not to exercise it, and approved the bill presented to him by the Legislature.
Nonetheless, the Director of the Budget decided, apparently in early October, 1976, "to reduce the allocations made by the State for the maintenance and operation of local sewage treatment systems.” By letter dated October 7, 1976, the director explained that his "action in this matter is one instance of a necessarily comprehensive effort to tighten State spending.” Stated simply, then, the director refused to expend, or impounded, $7 million of the total appropriation. Special Term, while praising the endeavor to attain fiscal responsibility, held that the executive impoundment constituted an invasion of the legislative domain. A unanimous Appellate Division affirmed, on the opinion of Special Term.
 On this appeal, the Budget Director, as well as the remaining respondents, points to no express provision of the *521 Constitution empowering the Governor to refuse to expend appropriated funds. Rather, he offers a dual justification for his action. The director urges that the Governor, as the Chief Executive Officer of the State, has an obligation to maintain a balanced budget throughout the fiscal year and, to accomplish that goal, possesses implied constitutional power to reduce duly enacted appropriations. Alternatively, respondents maintain that the appropriation statute invested the director with discretionary authority to withhold funds designated for the sewage treatment aid program. These arguments are rejected.[4]
The constitutional argument, while simple, is fatally flawed. It is true, as respondents maintain, that opinions of this court have recognized the Governor’s constitutional obligation to propose a balanced budget (Wein v State of New York, 39 NY2d 136, 141; see Wein v Carey, 41 NY2d 498, 503). But at no time has the court suggested that, once a budget plan is enacted, revenues and expenditures must match throughout the fiscal year. At any isolated point in time in the spending year, there must, as a practical matter, be some gap between the two. Recognizing this reality, the court has but recently disclaimed any obligation on the part of the State to maintain a balanced budget. "[I]t is unattainable for any budget plan, perfectly and honestly balanced in advance, to remain in balance to the end of the fiscal year. There must * * * in every year be either a deficit or a surplus” (Wein v Carey, supra, at p 504). Thus, respondent’s premise is untenable.
Given the absence of an obligation to maintain a balanced budget, the constitutional argument falters. For if the executive branch is under no duty to reduce expenditures or raise revenues in order to retain an equilibrium as the year progresses, it can hardly possess implied power unilaterally to "reduce” a lawful appropriation. It is not possible to speak of *522 the necessity for implying power to perform a nonexistent duty.[5]
Nor would the implication of executive power to impound funds be consistent with our constitutional form of government.[6] Our State Constitution establishes a system in which governmental powers are distributed among three co-ordinate and coequal branches (see NY Const, art III, § 1; art IV, § 1; art VI; Matter of Nicholas v Kahn, 47 NY2d 24, 30; Saxton v Carey, 44 NY2d 545). Extended analysis is not needed to detail the dangers of upsetting the delicate balance of power existing among the three, for history teaches that a foundation of free government is imperiled when any one of the coordinate branches absorbs or interferes with another. "It is not merely for convenience in the transaction of business that they are kept separate by the Constitution, but for the preservation of liberty itself, which is ended by the union of the three functions in one man, or in one body of men. It is a fundamental principle of the organic law that each department should be free from interference, in the discharge of its peculiar duties, by either of the others” (People ex rel. Burby v Howland, 155 NY 270, 282; see Matter of Nicholas v Kahn, supra, at pp 30-31).
In budgetary matters, the essential process is detailed by the Constitution, and the role of each branch distinctly treated. To simplify, the Governor, as Chief Executive Officer of the State, is obligated to submit a complete budget plan to the Legislature for its consideration (NY Const, art VII, § 2; Saxton v Carey, 44 NY2d 545, 549, supra). The Legislature then reviews the budget and may take various actions depending upon the nature of the appropriation (NY Const, art VII, § 4). When the Legislature adds an item of appropriation, that addition is subject to executive approval (NY Const, art VII, § 4). And the Governor possesses line veto power over appro *523 priation measures (NY Const, art IV, § 7). If the Governor declines to exercise the line veto, and instead approves the bill, the bill of course becomes law (NY Const, art IV, § 7).
Here, the Legislature added $14 million to the Governor’s recommendation for the sewage treatment works reimbursement program. As a legislative addition, the $14 million was subject to executive veto. The Governor elected to approve the measure, however, and it became law. A duly enacted statute, "once passed, cannot be changed or varied according to the whim or caprice of any officer, board or individual. It remains fixed until repealed or amended by the Legislature” (Schumer v Caplin, 241 NY 346, 351). Simply, the laws and policies of the State are established by the lawmaking powers, not by "officers acting solely on their own ideas of sound public policy, however excellent such ideas may be” (Matter of Picone v Commissioner of Licenses of City of N. Y., 241 NY 157, 162). Once the appropriation was approved, therefore, the Governor and his subordinates were duty bound "to take care that [it was] faithfully executed” (NY Const, art IV, § 3).
However laudable its goals, the executive branch may not override enactments which have emerged from the lawmaking process. It is required to implement policy declarations of the Legislature, unless vetoed or judicially invalidated. This the executive failed to do. The Budget Director’s "order does not direct that a [legislative] policy be executed in a manner prescribed by” the Legislature; rather, "it directs that [an executive] policy be executed in a manner prescribed by the [executive]” (Youngstown Co. v Sawyer, 343 US 579, 588). Such a usurpation of the legislative function cannot receive judicial sanction.
This is not to say that the separation of powers doctrine creates a "captious, doctrinaire and inelastic classification of governmental functions” (People v Tremaine, 252 NY 27, 39 [Pound, J.]). True, there are areas in which the responsibilities of the three great branches of government overlap or intersect, and in which powers cannot be immutably fixed. But it cannot be denied that a principal function of the executive is to carry out the laws of the State, whether embodied in statutory or other form. A failure to fulfill this obligation violates the unequivocal command of the Constitution — it is not subject to academic debate concerning the proper division of governmental powers.
From a fiscal standpoint, it may be desirable to attempt to *524 maintain revenues and expenditures in rough balance throughout the year. And it is not suggested that State government is powerless to do so by appropriate and constitutional means. The issue of what steps, if any, may be properly taken is a question not now before the court, and upon which no opinion need be expressed. It must be recognized, however, that the desire to maintain a balanced budget does not furnish an occasion for the exercise of an extraordinary power which does not otherwise constitutionally exist.
Finally, contrary to respondents’ contention, the appropriation did not confer unfettered discretion upon the director to withhold all or any portion of the appropriation. Such a legislative delegation would be drastic indeed, and may not be inferred from ambiguous language. This is especially so in instances where the Legislature has provided no guidelines for the exercise of discretion (cf. Matter of Levine v Whalen, 39 NY2d 510, 515-516). The appropriation at issue, couched in mandatory terms, does not yield the interpretation respondents would place upon it. Indeed, it provides that "the moneys hereby appropriated shall be available * * * and shall be apportioned” (emphasis added). Although the appropriation does contain the words "as approved by the director of the budget”, that language requires only that the regulations apportioning the funds be subject to prior approval.
In sum, under the State Constitution, the executive possesses no express or inherent power — based upon its view of sound fiscal policy — to impound funds which have been appropriated by the Legislature.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be modified to the extent of converting this article 78 proceeding into an action seeking declaratory relief, and entering judgment in favor of petitioners declaring that the impoundment of $7 million of the appropriation described in this opinion was unconstitutional, and, as so modified, the order should be affirmed, with costs to petitioner.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur in Per Curiam opinion.
Order, insofar as appealed from, modified, with costs to petitioners, in accordance with the opinion herein and, as so modified, affirmed.

. The State assistance program was governed by ECL 17-1905 (subd 2) which, at the time, provided in pertinent part: "Within the limits of the annual appropriation made by the legislature, the commissioner shall apportion and approve for payment state assistance to each municipality which, by itself or in cooperation with one or more other municipalities or other governments, operates and maintains or is responsible for the payment of expenses for operation and maintenance of sewage treatment works during all or part of a fiscal year of such municipality, in accordance with qualifications for state assistance applicable to the operation and maintenance of such works. * * * Such state assistance, when apportioned among the municipalities *520 applying, shall be for not more than one-third of the amount approved by the commissioner as having been duly expended by the municipality for such operation and maintenance during each of the three successive fiscal years of the municipality beginning with its fiscal year commencing on or after June 1, 1974. Such state assistance shall be paid on account of such expenditures after the termination of the fiscal year of the municipality”. The statute has since been amended (L 1978, ch 688, § 1; L 1977, ch 68, § 1), but the amendment is not at issue.

. Petitioners also challenged the Commissioner of Environmental Conservation’s manner of allocating available funds, contending that it discriminated against towns and counties while favoring large cities. Both Supreme Court and the Appellate Division agreed with petitioners’ position, and respondents do not now appeal from that determination. Accordingly, no opinion is expressed as to the propriety of the rates established by the commissioner.

. The appropriation expressly stated that: "The moneys hereby appropriated shall be available for payment of state aid heretofore accrued or hereafter to accrue to municipalities pursuant to the environmental conservation law and the public health law and shall be apportioned in accordance with regulations promulgated by the commissioner of environmental conservation and as approved by the director of the budget.” (L 1976, ch 53.)

. Respondents contend, apparently for the first time on this appeal, that the appropriation has lapsed by operation of law (see NY Const, art VII, § 7, which provides that "[n]o money shall ever be paid out of the state treasury * * * except in pursuance of an appropriation by law * * * within two years next after the passage of such appropriation act”). Whatever the merit of this position, upon which we express no opinion, it can no longer be said that respondents are under a legal duty which is "so clear as not to admit of reasonable doubt or controversy” (Matter of Burr v Voorhis, 229 NY 382, 387). It follows that mandamus would no longer be an appropriate remedy (see id.) and this proceeding is therefore converted into a declaratory judgment action (CPLR 103, subd [c]; see Group House of Port Washington v Board of Zoning & Appeals of Town of North Hempstead, 45 NY2d 266, 271).

. Even assuming the existence of a requirement that the budget remain in balance, which does not exist, respondents offer no explanation as to why this obligation would fall solely on the Governor, rather than being shared by the Legislature and the executive.

. Although certainly not dispositive of the proper interpretation of the New York Constitution, Federal courts have rebuffed claims that the Federal Constitution invests the president with inherent power to impound lawful appropriations (e.g., Guadamuz v Ash, 368 F Supp 1233; Community Action Program Executive Directors Assn, of N. J. v Ash, 365 F Supp 1355; National Council of Community Mental Health Centers v Weinberger, 361 F Supp 897; see, also, Train v City of New York, 420 US 35; Note, 1975 Wis L Rev 203).