631 F.2d 162
 NEW YORK STATE ASSOCIATION FOR RETARDED CHILDREN, INC. et
al. and Patricia Parisi et al., Plaintiffs-Appellees,
v.
Hugh L. CAREY, Individually and as Governor of the State of
New York, and Edward V. Regan, Individually and as
Comptroller of the State of New York, et
al., Defendants-Appellants.
 Nos. 1215, 1235, Dockets 80-7289, 80-7295.
 United States Court of Appeals,
Second Circuit.
 Argued April 28, 1980.
Decided June 4, 1980.
Petition for Rehearing June 18, 1980.
Decided July 28, 1980.
 
 Taylor R. Briggs, New York City (LeBoeuf, Lamb, Leiby & MacCrae, New York City, Richard C. Cole, Mary Jo Eyster, Caren S. Brutten, Asst. Atty. Gen., Robert Abrams, Atty. Gen. of the State of New York, New York City, of counsel), for defendants-appellants Hugh L. Carey and Edward V. Regan.
 Christopher A. Hansen, New York City (New York Civil Liberties Union, Robert M. Levy, New York City, of counsel), for plaintiffs-appellees.
 Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Arthur L. Liman, Jonathan D. Siegfried, Helen Hershkoff, New York City, of counsel), for plaintiffs-appellees.
 Jack Bernstein, New York City, Production and Advocacy System for Developmental Disabilities, Inc., for plaintiffs-appellees.
 Before LUMBARD, VAN GRAAFEILAND and KEARSE, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Hugh L. Carey and Edward V. Regan, the Governor and Comptroller of the State of New York respectively, appeal from two orders entered in the Eastern District by Judge Bartels on April 10, 1980. One order joined the Comptroller as a party, the other adjudged the Governor and the Comptroller to be in contempt if funding was not provided for the Willowbrook Review Panel by April 15th. We granted a stay of the contempt order pending disposition of this appeal.
 
 
 2
 Although the Governor was a party to the Consent Judgment of April 30, 1975, which was designed to improve conditions for a class of 5200 mentally retarded residents at the Willowbrook Developmental Center on Staten Island, in part through the establishment of a Review Panel, we conclude that Governor Carey has complied with the Consent Judgment by taking all steps within his lawful authority to secure funding for the Panel. Furthermore, we conclude that since the Consent Judgment clearly states that the Governor's efforts are to be made within the framework of the state constitution and laws, there is no justification for requiring action in violation of New York law. Accordingly, the order is reversed.
 
 
 3
 This action was brought in 1972 by the plaintiff and other similar organizations and the parents of retarded residents on behalf of all Willowbrook residents against the Governor and numerous state agencies and officials charged with operating Willowbrook to improve conditions which were alleged to violate the constitutional rights of the residents. After extended hearings, the parties agreed to a Consent Judgment signed by Judge Orrin G. Judd on April 30, 1975, which provided in part that "Without admission and prior to final findings of fact and conclusions of law" the parties agreed to "additional steps, standards and procedures necessary to secure the constitutional right to protection from harm for Willowbrook's residents" in order to ensure that the procedures set out in greater detail in the judgment and accompanying 29 page appendix would be carried out. The judgment provided for the creation of a seven member Review Panel.
 
 
 4
 Paragraph 2 of the Consent Judgment provided: "Within their lawful authority, including the State constitution and applicable State laws, and subject to any legislative approval that may be required, defendants are hereby ordered and enjoined to take all actions necessary to secure implementation of the steps, standards and procedures contained in this judgment and in Appendix 'A' hereto . . . Defendants shall take all steps necessary to ensure the full and timely financing of this judgment, including, if necessary, submission of appropriate budget requests to the legislature." It is conceded that the Governor has done all in his power to make specific budget requests to the Legislature to obtain the appropriation of $342,000 to finance the operation of the Review Panel and its staff. The funds requested for a Review Panel constituted a specific line item under the $747,000 requested for "Court-Ordered Program". Despite the Governor's request, the Legislature specifically deleted the entire $342,000 item. The Senate Finance Committee and the Assembly Ways and Means Committee stated:
 
 
 5
 The Fiscal Committees support the efforts of the Executive to meet the community placement mandates of the Willowbrook Consent Decree. Funding is decreased by ($348,000) to reflect denial of funding for the Willowbrook Review Panel and to return reimbursement rates for other advisory groups to 1979-80 levels.
 
 
 6
 Apparently the Legislature disapproved of the high per diem rate to be paid to consultants on the Review Panel. The plaintiffs then petitioned the district court to order the restoration of the funds and Judge Bartels directed the Governor and the Comptroller (about to be joined as a party) to show cause on April 7 why they should not be ordered to pay the Review Panel's expenses or be held in contempt by failure to do so. After hearing argument, Judge Bartels ordered that the Comptroller be joined as a party and that he and the Governor be adjudged in contempt if funding was not provided by April 15. Meanwhile, on April 14, the Governor submitted a supplemental appropriation bill, upon which the Legislature has not yet acted, to restore the Review Panel's funds.
 
 
 7
 Judge Bartels acknowledged at the April 7 show-cause hearing that Governor Carey has acted entirely in good faith in this dispute. Nevertheless, Judge Bartels stated in his April 10 Memorandum Decision and Order, "(W)e remain unconvinced that the Governor, together with the extensive resources, financial and otherwise, at his disposal, has done all within his powers, through formal and informal channels, to see that funding be either restored or replaced." Judge Bartels then suggested that the Governor, in order to provide at least temporary funding for the Panel, could draw funds from any one of five appropriations which, in Judge Bartels' view, could be considered to comprehend such a use, or could interchange a portion of appropriated funds pursuant to Section 51 of the New York Finance Law. Accordingly, on the ground that funds from which the Review Panel could be paid were at the appellants' disposal, Judge Bartels ordered that Governor Carey and Comptroller Regan be held in contempt if funding was not provided for the Review Panel by April 15. We reverse.
 
 
 8
 The appellants can obey Judge Bartels' order, and thereby avoid the sanctions attending contempt, only by violating the Constitution and laws of the State of New York. Article VII, Section 7 of the New York State Constitution prescribes:
 
 
 9
 No money shall ever be paid out of the state treasury or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; . . . and every such law making a new appropriation or continuing or reviving an appropriation shall distinctly specify the sum appropriated, and the object or purpose to which it is to be applied; and it shall not be sufficient for such law to refer to any other law to fix such sum.
 
 
 10
 New York case law states clearly that this provision "prohibits funds from being expended in excess of the amounts appropriated and for purposes other than those specified in the Appropriations Bill." County of Oneida v. Berle, 91 Misc.2d 694, 398 N.Y.S.2d 600, 603 (Sup.Ct.1977), aff'd 49 N.Y.2d 515, 427 N.Y.S.2d 407, 404 N.E.2d 133 (N.Y. Court of Appeals, per curiam, 1980). In affirming the Supreme Court in Berle, the New York Court of Appeals reiterated, "However laudable its goals, the executive branch may not override enactments which have emerged from the lawmaking process. It is required to implement policy declarations of the Legislature, unless vetoed or judicially invalidated." 49 N.Y.2d at 523, 427 N.Y.S.2d at 412, 404 N.E.2d at 137 (1980). Thus, under New York law, Governor Carey can legally expend funds for the Review Panel only if the Legislature has appropriated funds for that purpose. The Legislature did not appropriate funds for the Review Panel; on the contrary, it deleted the proposed line item for the Review Panel and it expressly stated its intention to deny such funding in the Report of the Senate Finance Committee and the Assembly Ways and Means Committee.[1]
 
 
 11
 The Legislature's denial also bars Governor Carey, notwithstanding the suggestions of Judge Bartels and appellees, from drawing funds for the Review Panel from other appropriations or pursuant to his authority under Section 51 of the New York State Finance Law to interchange up to 5% of different appropriations. Section 43 of the New York State Finance Law states:
 
 
 12
 Money appropriated for a specific purpose shall not be used for any other purpose, and the Comptroller shall not draw a warrant for the payment of any sum appropriated, unless it clearly appears from the detailed statement presented to him by the person demanding the same as required by this chapter, that the purposes for which such money is demanded are those for which it was appropriated.
 
 
 13
 In light of the Legislature's denial of funding for the Review Panel, Governor Carey cannot present to Comptroller Regan, as Section 43 requires, a statement clearly indicating that "the purposes for which such money is demanded are those for which it is appropriated." Section 51 does not avail Governor Carey because it only authorizes an interchange between, on the one hand, "any item or items within a program or purpose" and, on the other, "any item or items within the same program or purpose, or with other items . . . contained in the comptroller's classification." There being no item for the Review Panel in the enacted budget, Governor Carey cannot interchange funds between the Review Panel and some item that the Legislature did enact.
 
 
 14
 Appellees argue that Judge Bartels can order Governor Carey to expend funds for the Review Panel, or face contempt, even if New York law forbids Governor Carey from expending funds for that purpose. Appellees rest this argument upon cases which hold that state action, or inaction, cannot defeat a constitutional or federally created right. See e. g., State of Washington v. Washington State Commercial Passenger Fishing Vessel Association, 444 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979); North Carolina Board of Education v. Swann, 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586 (1971). The cases appellees cite did not, however, involve the remedy ordered in this case: that a state official expend state funds for a purpose expressly disallowed by the state legislature. We have previously held, and repeat here, that a federal district court ought not to put itself "in the difficult position of trying to enforce a direct order . . . to raise and allocate large sums of money, . . . steps traditionally left to appropriate executive and legislative bodies responsible to the voters." Rhem v. Malcolm, 507 F.2d 333, 341 (2d Cir. 1974). In the face of constitutional violations at a state institution, a federal court can order the state either to take the steps necessary to rectify the violations or to close the institution. Thus, a state cannot avoid the obligation of correcting the constitutional violations of its institutions simply by pleading fiscal inability. Dimarzo v. Cahill, 575 F.2d 16 (1st Cir. 1978); Welsch v. Likins, 550 F.2d 1122 (8th Cir. 1977); Rhem, supra. But that remedy leaves the question of the expenditure of state funds in the hands of citizens of the state, not in the hands of federal judges. Furthermore, the broad remedial powers invoked by appellees are predicated upon a finding of a constitutional violation. Assuming that the conditions at Willowbrook violated the Constitution in 1975 when the Consent Judgment was filed,[2] and accordingly that the federal court would have had remedial power to order the establishment of the Review Panel upon a finding of unconstitutionality,[3] there is no basis for additionally assuming that, by itself, the state's refusal to fund the Review Panel, which was established by the Consent Judgment, violates the Constitution.
 
 
 15
 The wording of the Consent Judgment envisioned the practical and political difficulties which the Governor necessarily faced regarding the appropriation of funds to maintain Willowbrook, and provide for the Review Panel, in accordance with provisions of the Consent Judgment. Thus, the Governor consented only to act within his "lawful authority, including the State Constitution and applicable State laws, and subject to any legislative approval that may be required."
 
 
 16
 Under the Consent Judgment the court cannot compel the Governor to act unlawfully. Those organizations and citizens who are properly concerned with the supervision of the conditions at Willowbrook must seek to convince their representatives in the New York State Senate and Assembly, who control the purse-strings and determine the priorities for the expenditure of State money, that funds for the Review Panel should be provided.
 
 
 17
 Reversed.
 
 KEARSE, Circuit Judge (concurring):
 
 18
 I concur in the result, but I find it unnecessary, on the facts of this case, to decide whether a federal court ought to be in a " 'position of trying to enforce a direct order . . . to raise and allocate large sums of money. . . .' " (Majority opinion at 165.) And, with all due respect, I do not agree with the implications of the majority opinion that the only alternatives available to the district court to remedy constitutional violations at a state institution are to "order the state either to take the steps necessary to rectify the violations or to close the institution." (Id.)[1] I believe that the order of contempt should be reversed simply because it was not demonstrated that the Consent Judgment was violated.
 
 
 19
 The defendants who were parties to the Consent Judgment included Governor Carey and other State officials but did not include the State legislature. Paragraph 2 of the Consent Judgment expressly stated that the defendants would take the actions required by the Judgment, which included the funding of the Review Panel,[2] within the framework of the State's constitution and laws, and subject to any legislative approval that might be required. Paragraph 2 concluded with the requirement that "Defendants should take all steps necessary to ensure full and timely financing of this Judgment, including, if necessary, submission of appropriate budget requests to the legislature."
 
 
 20
 The district court found that the Governor had made a good faith effort to ensure financing for the Review Panel through the submission of a budget request which expressly sought $342,300 for "services and expenses of the Willowbrook Review Panel, including compensation for panel members."[3] The legislature deleted this line from the proposed budget and enacted the budget without providing funds for the Review Panel. The legislature's Fiscal Committees' Report on the budget stated as follows:
 
 
 21
 The Fiscal Committees support the efforts of the Executive to meet the community placement mandates of the Willowbrook Consent Decree. Funding is decreased by ($348,000) to reflect denial of funding for the Willowbrook Review Panel and to return reimbursement rates for other advisory groups to 1979-80 levels.
 
 
 22
 (Emphasis added.) Thus the Governor's request for Review Panel funds was denied by the legislature.
 
 
 23
 The district court was nevertheless critical of the Governor for not funding the Review Panel out of moneys appropriated elsewhere in the budget. Yet, as pointed out by the majority, New York law forbids the Governor's expenditure of funds for purposes specifically eliminated by the legislature. In New York Public Interest Research Group, Inc. v. Carey, 86 Misc.2d 329, 383 N.Y.S.2d 197 (Sup.Ct.), aff'd 55 A.D.2d 274, 390 N.Y.S.2d 236 (3d Dep't 1976), app. dism. as moot, 41 N.Y.2d 1072, 396 N.Y.S.2d 185 (1977), the New York court held that expenditures could be made in spite of disapproval expressed in a committee report so long as they were not for specific items that had been deleted from the budget; but the court observed that if a specific deletion had been made, no expenditure could lawfully follow:
 
 
 24
 Prior to such enactment these committees reviewed the requests of different executive departments and in some instances conducted hearings and made certain amendments to the Budget Bill. To the extent that the Bill itself specifically eliminated certain positions and programs there is no dispute. Those positions and programs were effectively eliminated by appropriate legislative action and it is agreed that no expenditures can be made for any such position or program.
 
 
 25
 86 Misc.2d at 330, 383 N.Y.S.2d at 198 (emphasis added). Appellees would have us find that the legislature did not in fact intend to deny funding for the Review Panel, on the strength of a general statement in the preamble to the budget that the budget "reflects . . . the State's continued commitment to comply with the requirements of the Consent Judgment." I do not believe we are entitled to infer from this general statement an intention that Review Panel funding be continued,[4] in light of the action of the legislature in deleting the Review Panel line of the proposed budget and the express statement that the deletion was to "reflect denial of" such funding. Consequently I conclude that the Governor has done all within his lawful power to secure funding for the Review Panel.
 
 
 26
 Appellees argue that the contempt order nevertheless should be affirmed because state law cannot be allowed to thwart the effectuation of federally-mandated remedial measures.[5] While I would agree with this general proposition within appropriate limits, I do not consider it applicable to the present circumstances. The Consent Judgment clearly does not impose on the Governor any obligation to take action that is not within his "lawful authority," and the express recognition of that Judgment that funding may require "requests" to the legislature recognizes implicitly that such a request (to a body not party to the lawsuit) may be denied. Where the parties have chosen to condition defendants' performance of remedial steps, however important they may be, on state legislative approval, there is no justification for invalidating the withholding of that approval.
 
 
 27
 The importance of the Review Panel in the remedial scheme is clear from the Consent Judgment and was emphasized by this Court in New York State Ass'n for Retarded Children v. Carey, 596 F.2d 27 (2d Cir. 1979). The Panel is given responsibility for monitoring compliance, reporting to the court and recommending resolutions to disputes. Denial of funding for the Panel may result in a halt to all efforts toward implementation even efforts that require no special legislative approval or funding unless an alternative monitoring technique is devised. Since the Panel's responsibilities included dispute-resolution, the absence of the Panel may also result in more judicial involvement in implementing the Judgment.
 
 
 28
 District courts enjoy broad discretion in designing and enforcing equitable remedies, see Hart v. Community School Board, 512 F.2d 37, 55 (2d Cir. 1975); Bridgeport Guardians, Inc. v. Bridgeport Civil Service Comm'n, 482 F.2d 1333, 1340 (2d Cir. 1973), and have employed a variety of techniques for such purposes, see Special Project, The Remedial Process in Institutional Reform Litigation, 78 Colum.L.Rev. 784, 821-37, 858-70 (1978). Paragraph 9 of the Consent Judgment provides for retention of jurisdiction in the district court "for the purpose of enabling any party to apply at any time for . . . such further orders as may be necessary or appropriate for the construction of, implementation of, or enforcement of compliance with this judgment or any of the provisions thereof." In view of the Governor's avowed commitment to implementation of the Consent Judgment, the district court and the parties may well be able to arrive at an alternative method for monitoring compliance and resolving disputes. It is clear from the terms of the Consent Judgment, however, that the relief appellees seek here continuation of state funding for the Review Panel cannot be obtained in the face of express legislative disapproval.ORDER ON PETITION FOR REHEARING
 
 PER CURIAM:
 
 29
 In a petition for rehearing with a suggestion of rehearing en banc, the New York State Association for Retarded Children, et al., raised substantially the same arguments that we considered initially on this appeal. However, in a letter dated June 23, 1980, supplementing the petition, petitioners state for the first time that the United States Department of Justice has advised them that Governor Carey may draw, at his discretion, from a fund of $6 million in federal money to provide the $342,000 needed to fund the Willowbrook Review Panel and that, accordingly, because the expenditure of this federal money does not require the New York Legislature's prior approval, no state-law impediment prevents Governor Carey from using this money to comply with the funding requirements set forth in Section 7(c) of the Consent Judgment. Counsel for Governor Carey and Comptroller Regan, in a reply letter dated June 24, 1980, states that he is unaware of any such federal funds.
 
 
 30
 We have not heretofore been advised that federal money might be available to fund the Review Panel, nor was the district court, to our knowledge, advised of the availability of such funds. We therefore deny the petition for rehearing without prejudice to petitioners' presentation to the district court of evidence showing that Governor Carey has such money at his disposal.
 
 
 
 [1]
 Appellees argue that statements in the Report of the Senate Finance Committee and the Assembly Ways and Means Committee do not amount to binding statements of legislative intent under New York Public Interest Research Group, Inc. v. Carey, 55 A.D.2d 274, 390 N.Y.S.2d 236 (3d Dept. 1976), app. dism. as moot, 41 N.Y.2d 1072, 396 N.Y.S.2d 185 (1977), and that Governor Carey can therefore legally expend funds for the Review Panel. However, even assuming that the report in the case before us is the same type of report as that in New York Public Interest Research Group, where taxpayers sought to restrain the Governor from expending funds actually appropriated, we do not find appellee's argument persuasive. In that case, the report recommended to the Legislature, prior to the budget's enactment, certain reductions in the proposed appropriations and, in conjunction therewith, that certain specific job titles be abolished. In enacting the budget, the Legislature reduced proposed appropriations and specifically abolished jobs in some instances, and reduced appropriations but did not specifically abolish jobs in other instances. The Appellate Division held that the Legislature's specific abolition of some jobs and its silence as to other jobs "is sufficient to destroy reliance upon the Report as establishing the intent to abolish certain positions where the legislation is silent thereto." Id. 390 N.Y.S.2d at 237. In the case before us, however, the Legislature's deletion of the line item for the Review Panel wholly accords with the statement of intent in the Report. There is no reason, therefore, to doubt that the Report's statements represent the Legislature's intent. Moreover, Governor Carey could not draw funds for the Review Panel even absent the Report, for he could not do so in compliance with Section 43 of the New York State Finance Law, as explained infra
 
 
 [2]
 Appellants do not concede that the conditions of Willowbrook Developmental Center violate the Constitution today
 
 
 [3]
 Nothing in this opinion should be construed to agree with the view that a federal court properly exercises its function when it takes upon itself the supervision of a state institution like Willowbrook Development Center. From the record before us in New York Association for Retarded Children v. Carey, 596 F.2d 27, 33 (2d Cir.), cert. denied, Caughlin III v. N.Y. State Assoc. for Retarded Children Inc., 444 U.S. 836, 100 S.Ct. 70, 62 L.Ed.2d 46 (1979), and in this proceeding, it appears that the district court has, since 1975, devoted considerable attention to the details of the operation of the Review Panel and the supervision of Willowbrook
 
 
 [1]
 The majority cites and endorses Rhem v. Malcolm, 507 F.2d 333, 341 (2d Cir. 1974), as holding that a district court "ought not" to put itself in a position of trying to enforce a direct order requiring the expenditure of state funds. To the extent that the majority intends this statement, together with the sentence that follows, to reflect a limitation of the court's power, I do not believe Rhem should be read so broadly. In Rhem this Court opted for a remedy which it described as having "the crucial practical advantage . . . of not putting the judge in the difficult position of trying to enforce a direct order to the City to raise and allocate large sums of money . . ." 507 F.2d at 341 (emphasis added). In a footnote the Court indicated that special circumstances might warrant such an order:
 (S)ince prohibiting use of the Tombs to incarcerate detainees is a viable alternative, we do not have a situation where the unconstitutionally-administered governmental function must be kept operating in any event. In such a case, a court might have no choice but to order an expensive, burdensome or administratively inconvenient remedy.
 507 F.2d at 341 n.19.
 There is little doubt that a federal court can issue a remedial order which as a practical matter requires expenditures by the state. See Millikin v. Bradley, 433 U.S. 267, 289, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977) (upholding order requiring state to bear expenses since federal court can "enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury"). The courts understandably have been reluctant to cause "needless direct confrontations" with state legislatures, Welsch v. Likins, 550 F.2d 1122, 1132 (8th Cir. 1977), and in some cases have merely expressed the hope that state legislatures will cooperate once their constitutional duty is made clear. See, e. g., N.Y.S. Ass'n for Retarded Children v. Carey, 596 F.2d 27, 38-39 (2d Cir. 1979); Welsch v. Likins, supra, 550 F.2d at 1132.
 
 
 [2]
 Paragraph 7(c) of the Consent Judgment provides, in part: "Review Panel members and Review Panel staff shall receive appropriate compensation from defendants, on a monthly basis, and shall promptly be reimbursed by defendants for reasonable out of pocket expenses incurred in performing the duties of the Review Panel."
 
 
 [3]
 Prior to entry of the contempt order below, the Governor had submitted to the legislature a supplemental appropriation bill, with a "message of necessity," to restore funds for the Review Panel. The legislature had not acted upon this request by the date of oral argument and we are unaware of any action since that time
 
 
 [4]
 If the legislature is truly committed to compliance with the entire Consent Judgment, and not just so much of the Judgment as it chose to budget for, perhaps it will act favorably upon the supplemental appropriation request described in note 3 supra
 
 
 [5]
 Cf. State of Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 695, 99 S.Ct. 3055, 3080, 61 L.Ed.2d 823 (1979) (federal court can order state agency to prepare rules implementing federal court's order even if state law withholds from agency power to do so); North Carolina State Board of Education v. Swann, 402 U.S. 43, 45, 91 S.Ct. 1284, 1286, 28 L.Ed.2d 586 (1971) (invalidation of state anti-busing statute since statute "would inescapably operate to obstruct the remedies granted by the District Court . . .")