**ASSOCIATION OF SURROGATES AND SUPREME COURT REPORTERS WITHIN THE CITY OF NEW YORK, Mary O'Leary, President; Citywide Association of Law Assistants, Barbara Brown, President; Court Attorneys Association of the City of New York, Robert A. Mulhall, President; Court Officers Benevolent Association of Nassau Co., Jeffrey Pollack, President; District Council 37, American Federation of State, County and Municipal Employees & Local 1070, Paul Shelkin, President; Local 704, Service Employees International Union, John Walsh, President; New York State Supreme Court Officers Association, ILA, Local 2013, AFL–CIO John McKillop, President; Ninth Judicial District Court Employees Association, Martin Sharp, President; Suffolk Co. Court Employees Association, Inc., Thomas F. McGuinness, President; The Communication Workers of America, AFL–CIO, Local 1180, Arthur Cheliotes, President; Civil Service Forum, Local 300, Seiu, Salvatore**

Cangiarella, President; Janet Foster, Susan Glasbrenner, Michael Sullivan, David Richman, Greg Snigor, James Di-Napoli, William Rosario, Abel Peltro, George F. Berghorn, Lisa Rosenzweig and Michael Smith, Plaintiffs,

v.

STATE OF NEW YORK; Edward V. Regan, as Comptroller of the State of New York; Robert Abrams, as Attorney General of the State of New York; Matthew T. Crosson, as Chief Administrator of the Unified Court System and the State of New York Unified Court System, Defendants.

No. 90 Civ. 6522 (RPP).

United States District Court, S.D. New York.

Sept. 3, 1991.

Schlachter & Mauro by David Schlachter, Commack, N.Y., for plaintiffs.

Michael Colodner, Kenneth Falk, New York City, for defendant Matthew T. Crosson.

Robert Abrams, Atty. Gen., State of N.Y., Dept. of Law by Andrea Green, New York City, for defendants State of N.Y., Robert Abrams and Edward Regan.

## OPINION

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Matthew T. Crosson moves for an order entering judgment in this case, reversed and remanded to this Court by the Court of Appeals for the Second Circuit with instructions to:

(1) enter a declaratory judgment declaring that New York's lag-payroll law violates the contract clause of the United States Constitution; (2) enjoin the continuing effects and application of the lag-payroll law; and (3) enter an appropriate judgment for the plaintiffs which shall include restitution of the lagged wages for all affected employees. Whether or not interest shall be awarded on the restored wages will lie in the equitable discretion of the district court.

*Association of Surrogates v. State of New York,* 940 F.2d 766, 775 (2d Cir.1991). Defendant Crosson's proposed order would direct that the defendant State Comptroller pay the lagged moneys out of funds appropriated to the Judiciary in its 1990–1991 budget and that will lapse and become part of the State's General Funds on September 15, 1991. For the reasons set forth below, Defendant Crosson's motion is granted.

## BACKGROUND

Section 375 of Chapter 190 of the Laws of New York of 1990, signed into law on May 25, 1990, established a lag payroll for nonjudicial employees of the Unified Court System hired on or after April 7, 1983. Pursuant to that law, one day's pay was withheld from each paycheck for ten two-week periods beginning on November 7, 1990, until a total of two weeks' pay had been withheld, on March 13, 1991.

Plaintiffs had commenced a declaratory judgment action in October 1990, seeking to declare the lag payroll law unconstitutional and to enjoin defendants to pay plaintiffs pursuant to their collective bargaining agreements. By order and decision dated October 26, 1990, this Court denied plaintiffs' motions for a preliminary injunction and for summary judgment and granted defendants' cross-motion for summary judgment. 749 F.Supp. 97 (S.D.N.Y.1990).

On plaintiffs' appeal, the Court of Appeals for the Second Circuit, on July 31, 1991, reversed and remanded, declaring the lag payroll statute unconstitutional and directing restitution of the lagged wages. *Association of Surrogates,* 940 F.2d at 775.

On August 21, 1991, the Second Circuit denied state defendants' petition for rehearing and issued the mandate. As of the date of this opinion, a suggestion for rehearing *en banc* filed by defendants has not been acted on.

By order to show cause signed on August 23, 1991, Defendant Crosson moved this Court for immediate issuance of an order granting restitution of the lagged wages totalling 9.2 million dollars, to be paid out of 15.8 million dollars remaining of the funds appropriated to the Judiciary for the 1990–1991 fiscal year and which are due to lapse on September 15, 1991, at which time such funds will become part of the State's General Fund under section 40(3) of the State Finance Law.

Argument was heard on August 26, 1991, at which defendants Regan, Abrams, and State of New York (hereinafter State Defendants) objected to a judgment directing restitution from the funds remaining from appropriations to the Judiciary for the fiscal year 1990–1991 and to the Court's awarding plaintiffs interest on the lagged payroll funds. Defendant Crosson also opposed an interest award to plaintiffs. Plaintiffs requested an award of interest and supported payment from the funds remaining of the 1990–1991 appropriation to the Judiciary. All parties filed additional

papers in support of their respective positions on August 28, 1991. Because it was necessary that action be taken on August 29, 1991 to ensure that payments be computed and made by September 15, 1991, the Court entered judgment on August 29, 1991 with this opinion to follow.

## DISCUSSION

### 1. Court's Power to Order Payment from a Specific Appropriation

It is within the power of this Court to fashion an equitable remedy for the violation of plaintiff's constitutional rights under the invalidated lag payroll statute. District courts have broad discretion in granting equitable remedies for constitutional violations. *See Todaro v. Ward,* 565 F.2d 48, 54 n. 7 (2d Cir.1977) ("Appellate tribunals have accorded district courts broad discretion to frame equitable remedies so long as the relief granted is commensurate with the scope of the constitutional infraction."). This discretion encompasses the power to fashion, if necessary, remedies which may encroach on administrative responsibilities normally left in the hands of the state. *Cf., e.g., Milliken v. Bradley,* 433 U.S. 267, 282, 97 S.Ct. 2749, 2758, 53 L.Ed.2d 745 (1977) (specific educational remedies normally left to discretion of elected school board deemed necessary to make whole victims of pervasive segregation in schools); *Todaro,* 565 F.2d at 53–54 (district court permissibly deviated from customary "hands-off attitude" toward daily problems of prison administration where constitutional right to adequate medical care was at stake).

State Defendants object that this Court would abuse its discretion in ordering the state to pay the money judgment from a specific appropriation and by a specific date. All of the cases cited by state defendants, however, involved relatively drastic intrusions by federal courts into matters traditionally within the state's authority. State Defendants' Memorandum of Law in Opposition to Motion for Immediate Issuance of Order Granting Partial Judgment (hereinafter St.Def.Mem. in Opp.) at 5.

*Spallone v. United States,* 493 U.S. 265, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990), cited by State Defendants, is simply not on point. There, the Court held that the district court abused its discretion when it imposed "extraordinary" financial sanctions against individual councilmen of the City of Yonkers to secure compliance with the court's remedial orders designed to cure racial segregation in housing. The Supreme Court held that the district court first should have proceeded with contempt sanctions against the city alone, imposing financial sanctions against the individuals only if the former approach failed. *See id.* 110 S.Ct. at 634–35. The Court expressly declined to question the validity of the district court's remedial order itself, which was found to be within the proper bounds of discretion by the Court of Appeals. *See id.* at 631.

*Missouri v. Jenkins,* 495 U.S. 33, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990), involved a significant circumvention of state authority. There, the Court found that the district court abused its discretion and violated principles of comity when it engaged in the "extraordinary event" of imposing a tax increase to raise revenue necessary for implementing a school desegregation plan. *Id.* 110 S.Ct. at 1663. The Court noted that the district court, without first assuring itself that no permissible alternative would suffice, "not only intruded on local authority but circumvented it altogether." *Id.* The Court added that respect for the function of local government is particularly important where "those institutions are ready, willing, and—*but for the operation of state law curtailing their powers*—able to remedy the deprivation of constitutional rights themselves." *Id.*

Similarly, in *New York Association for Retarded Children v. Carey,* 631 F.2d 162 (2d Cir.1980), the inappropriate remedy ordered by the district court and reversed by the court of appeals required a state official to expend state funds for a purpose expressly disallowed by the state legislature. *Id.* at 165. In *Rhem v. Malcolm,* 507 F.2d 333 (2d Cir.1974), the court of appeals remanded a proceeding concerning unconstitutional conditions at a New York

City jail to the district court to refashion the equitable relief. There, the court found, the remedial scheme ordered by the district court unnecessarily placed the judge "in the difficult position of trying to enforce a direct order to the City to raise and allocate large sums of money, steps traditionally left to appropriate executive and legislative bodies." *Id.* at 341 (citation omitted).

■ In keeping with *Rhem* and *New York Association for Retarded Children,* this Court is not attempting to remedy the constitutional violations caused by the lag payroll statute by "rais[ing] and allocat[ing] large sums of money" through its own direct order, in contravention of state law. *See id.; New York Association for Retarded Children,* 631 F.2d at 165. Rather, it is simply directing defendants to pay the lagged wages they now admit are owed, St.Def.Mem. in Opp. at 4, from moneys the state legislature itself appropriated for the Judiciary Budget, Runko Aff. ¶ 3, by September 15, 1991 in order to comply with section 40 of the State Finance Law. Although State Defendants assert that payment from the 1990–1991 Judiciary Funds would be in contravention of traditional state practice, they provide no legal authority for the claim that to do so would violate state law. *See* Green Aff. ¶ 4; Scherry Aff. ¶¶ 4–6; Runko Aff. ¶ 5; St. Def.Mem. in Opp. at 6.

### 2. When Liability Was Incurred

Defendant Crosson argues that the lagged wages should be paid from 1990–91 funds appropriated to the Judiciary, which will lapse on September 15, 1991 and become part of the State's General Funds, and which must therefore be paid by that date. He also asserts that the lagged

wages represent liabilities incurred during the 1990–1991 fiscal year and thus may be paid under section 40 of the State Finance Law.[1]

■ The State Defendants admit that there is 15.8 million dollars remaining of funds appropriated to the Judiciary for fiscal year 1990–1991, Runko Aff. ¶ 3, but argue that the liability for lagged payroll will only be incurred when this Court enters judgment. The New York State Court of Appeals has held that, by its 1988 ratification of the 1989–1991 collective bargaining agreements at issue, the Legislature "gave 'approval' ... to the entire three-year obligation expressed in the contract" and thus created liability for wages each year of the agreement as those wages became due. *See Association of Surrogates v. State of New York,* 78 N.Y.2d 143, 155–56, 573 N.Y.S.2d 19, 25, 577 N.E.2d 10, 15–16 (1991). Were it not for the lag payroll legislation, now declared unconstitutional, the lagged moneys would have been paid in the 1990–1991 fiscal year. The circuit court's declaration of the unconstitutionality of the lag payroll statute rendered that statute void, *see Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986) (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)); *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985); *Eng v. Coughlin,* 858 F.2d 889, 896 (2d Cir.1988), thereby establishing that the lagged wages should in fact have been paid in 1990–1991; thus, it effectively reinstated the previously incurred liability.

State Defendants rely on *Matter of Anthony W.,* 74 Misc.2d 380, 344 N.Y.S.2d 682 (N.Y.Fam.Ct.1973), in which Judge Otten of the Family Court ordered the New York Commissioner of Education to certify his approval for partial payment of the tuition

---

1. The question of when the liability was incurred directly affects whether the lagged wages may be paid from the 1990–1991 appropriation: [Every] appropriation made at a regular session of the legislature shall ... cease to have force and effect, *except as to liabilities already incurred thereunder,* at the close of such fiscal year.... Every appropriation for whatever purpose which at the close of a fiscal year shall cease to have force and effect except as

to liabilities already incurred thereunder shall as to such liabilities continue in force and effect until the next succeeding fifteenth day of September, on which date such appropriation shall lapse and no money shall thereafter be paid out of the state treasury or any of its funds or any of the funds under its management pursuant to such appropriation. N.Y. State Fin. Law § 40(2)(a), (3) (McKinney 1989) (emphasis added).

costs incurred in a prior fiscal year by the City of New York for a physically handicapped child at a special school. The Commissioner had taken the position that the fiscal year had already lapsed for the year of attendance for which the tuition reimbursement was sought and that under section 40(3) of the State Finance Law payment could not be made unless a liability had been incurred prior to the end of the fiscal year that ended on March 31, 1972.

In its decision of May 29, 1973, the court ordered the Commissioner to certify his approval so as to require that the state reimburse. The court stated, "In these proceedings no liability of the state will have incurred until the orders are made and entered by this Court. It is the year when the liability is fixed, not when the incident occurred, that determines what appropriation is used." *Id.* at 381, 344 N.Y.S.2d at 684. In *Matter of Anthony W.*, no state liability was incurred under sections 4403 and 4407 of the State Education Law until the Commissioner approved the reimbursement, as the court ordered. The holding or dicta of that court is not precedent for a claim that payment for wages due from the state, deferred by legislation declared unconstitutional and thus void, is not a liability when those wages were earned.

Furthermore, the result of an order permitting payment from the Judiciary Budget funds for fiscal year 1991–1992, as proposed by State Defendants, would have an effect not consonant with the instruction of the circuit court to "enjoin the continuing effects and application of the lag-payroll law." That statute applied to nonjudicial employees of the Unified Court System hired on or after April 7, 1983. St.Def. Mem. in Opp. at 2. If the lagged moneys are taken from the 1991–1992 budget, the Unified Court System will be required to implement additional layoffs and court closings due to the Judiciary's 1991–1992 budgetary shortfall. Crosson Aff. ¶¶ 7–8. As relatively recent employees of the Unified Court System, those employees previously

affected by the lag payroll statute are likely to be the same employees subject to layoffs resulting from budgetary cutbacks caused by payment out of the Judiciary Budget for 1991–1992 as proposed by the State Defendants.[2]

Thus, if this Court were not to order the lagged moneys to be paid from the 1990–1991 appropriation, State Defendants would achieve essentially the same result—causing the affected employees of the Unified Court System to finance the court-ordered relief to these affected employees—that it would have if the lag payroll statute had been upheld. In fashioning an equitable remedy for the constitutional violations suffered by plaintiffs, the Court cannot ignore this inevitable consequence of the State Defendants' position. Payment out of the 1990–1991 appropriation will soften the impact of the expenditure for restitution since, by reducing the amount becoming General Funds of the state, it will disperse the burden of making restitution to all affected employees among all of the potential beneficiaries of the General Fund and not place that burden in large part on the affected employees themselves. Therefore, defendants have been ordered to make restitution of the lagged wages to plaintiffs from the 1990–1991 appropriation.

### 3. Prejudgment Interest

Defendant Crosson and State Defendants argue that plaintiffs are not entitled to interest on the restored wages. They contend that a balancing of the equitable considerations weighs strongly against an award of prejudgment interest in light of the "overwhelming fiscal crisis" currently engulfing the Unified Court System. Memorandum of Law in Support of Proposed Order of Defendant Crosson (hereinafter "Def.Crosson Mem. in Supp.") at 14. Further, they assert that defendants acted in good faith in enacting and implementing the lag payroll statute. Thus, they contend, an award of interest is not justified.

---

**2.** The Court notes from Plaintiffs' Memorandum of Law, Exhibit A, that the State Defendants are

also seeking to implement lag payroll legislation for fiscal year 1991–1992.

"Whether to award prejudgment interest [is] placed in the sound discretion of the district courts." *Lodges 743 and 1746 v. United Aircraft*, 534 F.2d 422, 446 (2d Cir.1975), *cert. denied*, 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976). In exercising this discretion, the court must weigh the relative equities between the beneficiaries and those upon whom the obligation is imposed " 'in accordance with the historic judicial principle' " that employees suffering from another's breach of a financial obligation should be made whole. *E.E.O.C. v. County of Erie*, 751 F.2d 79, 81 (2d Cir.1984) (quoting *Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947)); *see also United Aircraft*, 534 F.2d at 447 ("a vital ingredient in the determination whether to award prejudgment interest is a desire to make whole the party injured by the breach"). While the good faith of the employer may be taken into account by the district court in deciding whether interest should be awarded, the existence of good faith does not automatically render an award of interest improper. *E.E.O.C.*, 751 F.2d at 81. Wages are for most persons fundamental requirements for the purchase of basic necessities. Thus, an employee from whom wages are wrongfully withheld is customarily entitled not only to the amount of those wages, "but also to compensation for the delay in receiving those wages." *Id.* at 82.

Plaintiffs have been denied the use of money that should have been paid to them beginning in early November of 1990. "In these days in which all of us feel the effects of inflation, it is almost unnecessary to reiterate that only if such interest is awarded will a person wrongfully deprived of his money be made whole for the loss." *Waterside Ocean Navigation Co. v. International Navigation Ltd.*, 737 F.2d 150, 152 (2d Cir.1984). Accordingly, this Court has awarded interest to be paid, based on an annual rate of interest of nine percent, from March 13, 1991 to the date the lagged wages are paid. The nine percent rate of interest reflects that currently paid by the United States Treasury Department on tax refunds.

For ease of calculation, the Court has ordered the interest to be computed from March 13, 1991, the last date on which checks reflecting the withholding of lagged moneys were received. This obviates the need to engage in the complex calculations required to determine separate amounts of interest based on each paycheck received in the relevant twenty-week period, and instead allows computation of interest for the entire sum of lagged wages for each employee. The percentage of interest awarded, which is higher than that currently paid by money market funds or savings accounts, sufficiently compensates plaintiffs for the fact that they have been deprived of wages beginning in November 7, 1990.

IT IS SO ORDERED.