In the Matter of ALFREDA W. SLOMINSKI, as Comptroller of the County of Erie, Appellant-Respondent, v EDWARD J. RUTKOWSKI, as County Executive of Erie County, et al., Respondents-Appellants.

Fourth Department, January 21, 1983

APPEARANCES OF COUNSEL

*Bouvier, O'Connor, Cegielski & Levine* (*Gerald Bouvier* of counsel), for appellant-respondent.

*Eugene F. Pigott, Jr.,* for respondents-appellants.

OPINION OF THE COURT

HANCOCK, JR., J.

The Erie County Charter[1] (Charter) became effective on November 17, 1959. Subdivision c of section 202 of the Charter confers upon the legislature the power by "local law to adopt, amend and repeal an administrative code which shall set forth the details of * * * county government in harmony with the provisions of this charter" and which may "contain revisions, simplifications, consolidations, codifications and restatements of special laws, local laws, ordinances, resolutions, rules and regulations consistent with this charter." Pursuant to subdivision c of section 202 the legislature enacted Local Law No. 1 (1960) (eff Jan. 1, 1961) as the Erie County Administrative Code (Administrative Code), including the provision the validity of which is in issue in this proceeding, i.e., subdivision e of section 3.09 which follows: "Except in the legislative or judicial branch, no appointive county office or position which hereafter becomes vacant shall be filled until the county executive has certified in writing to the county legislature the necessity of filling the same."

This proceeding brought by petitioner, the Erie County Comptroller, against respondent Rutkowski, the Erie County Executive, and others, arises out of the County Executive's refusal to certify pursuant to subdivision e of section 3.09 of the Administrative Code the necessity of filling certain vacancies in the comptroller's office.

---

1. Enacted as Erie County Local Law No. 1 (1959) pursuant to section 33 of the Municipal Home Rule Law and approved by referendum on November 3, 1959.

■ ■ In the budget for fiscal 1982, as adopted by the legislature on December 8, 1981, 77 positions were approved for the comptroller's office. Sometime thereafter during fiscal 1982, 11 of the 77 positions became vacant. When the comptroller duly filed a written "request for filling vacancy" (Form F7-7 as prescribed by the Erie County personnel policies and procedures) seeking certification of the necessity of filling the positions, the County Executive approved the request for six of the vacancies but declined as to the remaining five. In her CPLR article 78 proceeding brought to compel respondents to certify the vacant positions, petitioner has attacked the validity and the constitutionality of subdivision e of section 3.09 of the Administrative Code and the power given the executive to block the filling of vacancies thereunder as an unlawful delegation of legislative power to the executive, as a "perversion of both tradition and governing law relative to separation of powers of government", and as a curtailment of the powers of elected officials (i.e., the comptroller and the legislators) contrary to section 23 (subd 2, par f) of the Municipal Home Rule Law because it was not approved by referendum. Special Term granted respondents' motion to dismiss the petition pursuant to CPLR 3211 (subd [a], par 7) and CPLR 7804 (subd [f]) but decreed that petitioner is entitled to be reimbursed for her attorney's fees in an amount to be determined after a hearing. Petitioner has appealed from the dismissal and respondents have cross-appealed from the allowance of attorney's fees. We affirm.

■ Before reaching the merits of petitioner's appeal, we briefly address respondents' contention that the proceeding should be dismissed as moot because the five vacant positions in the comptroller's office are now filled.[2] We conclude that petitioner's appeal presents novel and important contentions pertaining to the construction of the Erie County Charter and to the validity of an important provision of the Erie County Administrative Code which, if sustained, would effect significant changes in the division of powers between the executive and legislative branches of the Erie County government; and further, that there is a

---

2. Petitioner concedes in her brief that the County Executive "did, subsequent to the order here appealed, certify the necessity of the above mentioned five positions."

reasonable likelihood that similar disputes over the County Executive's prerogative under subdivision e of section 3.09 of the Administrative Code will arise not only with respect to the comptroller's office but to other offices or departments. For these reasons we hold that this is the exceptional case involving substantial questions of public interest which are likely to recur and that it should not be dismissed (see *Matter of Jones v Berman,* 37 NY2d 42, 57; *Le Drugstore Etats Unis v New York State Bd. of Pharmacy,* 33 NY2d 298, 301; *Matter of Gold v Lomenzo,* 29 NY2d 468, 476; see, generally, *Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714, n 1).

Because petitioner's contentions as to the invalidity of subdivision e of section 3.09 of the Administrative Code in its specific application to the five unfilled vacancies have been resolved, her CPLR article 78 proceeding is no longer appropriate. Accordingly, we convert it pursuant to CPLR 103 (subd [c]) to a declaratory judgment action challenging the validity of the code provision on its face (see *Board of Educ. v Gootnick,* 49 NY2d 683, 687).

We turn then to the merits. The decisive issue, as we perceive it, is whether subdivision e of section 3.09 of the Administrative Code adopted by the legislature pursuant to the specific authorization in subdivision c of section 202 of the Erie County Charter and to the mandate of section 33 (subd 4, par d) of the Municipal Home Rule Law conforms to the limitations imposed by those sections that the local law be "in harmony with" and "consistent with the county charter." If subdivision e of section 3.09 of the Administrative Code is "in harmony with" and "consistent with" the structure of Erie County government as set forth in the Erie County Charter and the division of powers between the legislative and executive branches delineated therein, then the section was lawfully adopted by local law in accordance with subdivision c of section 202 of the Erie County Charter; and the powers granted to the County Executive under subdivision e of section 3.09 of the Administrative Code would necessarily have been lawfully delegated and exercised by the executive as powers properly conferred by the legislature. Thus, if the section is lawfully adopted under the Charter, there can have been no uncon-

stitutional or unlawful delegation of powers or encroachment on the legislative prerogative.

It should be noted that the only issue presented concerns the power of the County Executive to certify positions for filling which, like the five positions in the comptroller's office, have become vacant during the fiscal year, and the parties in their briefs appear to interpret subdivision e of section 3.09 of the Administrative Code as having been intended to grant to the executive no more than this power. Accordingly, we interpret subdivision e of section 3.09 of the Administrative Code as so limited. Thus, we are not concerned with a construction of subdivision e of section 3.09 of the Administrative Code which would empower the executive to refuse to approve the filling either of newly added positions or vacant positions which have been approved *de novo* in a succeeding budget that has been duly adopted by the joint action of the legislature and the executive pursuant to sections 1802 and 1803 of the Charter.[3]

We must, then, analyze the respective powers and duties of the legislative and executive branches as defined in the Charter and the nature of the power to certify the necessity for filling vacant positions in order to determine whether the grant of that power by the legislature to the executive in subdivision e of section 3.09 of the Administrative Code is in harmony and consistent with the Charter. Section 202 of the Charter ("Legislative Branch * * * Powers and duties") provides that: "Except as otherwise provided in this charter, the county legislature shall have and exercise all powers and duties of the county, all powers and duties

---

3. Adopting this interpretation avoids any conflict with *Matter of Henry v Noto* (74 AD2d 604, mod 50 NY2d 816), relied upon by petitioner, which invalidated a resolution giving to the County Executive and the presiding officer power which could "be used to perennially keep a position vacant, thereby effectively abolishing the position" (*Matter of Henry v Noto*, 74 AD2d, at p 605) and negating the District Attorney's power under the Charter to hire such assistants as the county legislature may allow in the budget. Under the accepted rule of construction that a court should avoid that construction of an enactment which would render it *invalid* (see, generally, McKinney's Cons Laws of NY, Book 1, Statutes, §§ 141, 150), we think that the reading of subdivision e of section 3.09 of the Administrative Code as limited to the filling of vacancies occurring during the fiscal year is proper.

heretofore or hereafter conferred or imposed on said county legislature or other county legislative body by applicable law, and all powers necessarily incidental thereto." In addition to this general power, the Charter gives the legislature, among others, the following specific powers and duties: to make appropriations, levy taxes and incur indebtedness (Charter, § 202, subd a); to exercise all powers of local legislation subject to veto by the County Executive in certain instances (Charter, § 202, subd b); to fix the compensation of all county officers and employees except members of the judiciary (Charter, § 202, subd f); and to fix the amount of bonds of county officers and employees (Charter, § 202, subd g). Further, the legislature may, subject to executive veto (Charter, § 1807), make emergency appropriations and supplemental appropriations of unanticipated revenues (Charter, § 1805). It may upon written request by the County Executive transfer funds from one administrative unit to another and, in certain instances, has the power to approve the transfer of funds by the County Executive within the same administrative unit (Charter, § 1806).

Section 301 of the Charter provides that the "executive branch of county government shall be administered by the county executive who shall be elected from the county at large". These specific powers and duties of the County Executive are found in section 302 of the Charter which, insofar as pertinent, states:

"Section 302. Powers and duties. The county executive in addition to any other powers and duties provided by this charter shall:

"a. Be the chief executive officer and administrative head of the county government * * *

"d. Be the chief budget officer of the county * * *

"k. Perform such other duties and have such other powers as may be prescribed for him by law, administrative code, county ordinance or resolution.

"l. In addition to the powers set forth in this charter, have and be responsible for the exercise of all executive and administrative powers in relation to any and all functions of county government not otherwise specified in this charter.

"m. Have all necessary incidental powers to perform and exercise any of the duties and functions specified above or lawfully delegated to him."

The executive is empowered to veto additional expenditures approved by the legislature either in making additions to his proposed budget (Charter, § 1803, subd C) or in passing supplemental or emergency appropriations during the fiscal year (Charter, § 1807). He may, subject to legislative approval in certain instances, transfer funds within an administrative unit (Charter, § 1806), and may request the legislature to transfer funds from one such unit to another (Charter, § 1806).

As chief budget officer (Charter, § 302, subd d) the County Executive is given exclusive authority over the division of the budget which is a part of his office (Charter, § 305). The budget director, who is appointed by and serves at the pleasure of the executive, assists "the county executive in the preparation and administration of the operating and capital budgets and in the study of administrative efficiency" (Charter, § 305).

Section 401 of the Charter establishes the Department of Finance headed by the commissioner who is appointed by the County Executive, subject to confirmation by the legislature. The Commissioner of Finance, as "chief fiscal officer of the county" has "charge of the administration of all its financial affairs" (Charter, § 402, subd a) and collects, receives, deposits, invests, has custody of and disburses all county funds (Charter, § 402, subd b).

In addition, the Charter confers upon the executive responsibilities for determining tax equalization rates (Charter, § 302, subd e), designating depositories for county funds (Charter, § 302, subd g) and approving the sufficiency of sureties on official bonds and undertakings (Charter, § 302, subd h).

The preparation and adoption of the budget requires action by both the legislature and the County Executive. Each has a role and a responsibility. The County Executive submits a tentative budget for the ensuing fiscal year to the legislature by the 10th day of November (Charter, § 1802). After one or more public hearings the legislature may reduce the budget and strike items (except appropria-

tions for debt service) without executive approval (Charter, § 1803, subd A). The legislature may add items to the budget "provided that such additions or increases are stated separately and distinctly" (Charter, § 1803, subd A). However, such additions are subject to a veto by the County Executive in accordance with the procedures in subdivision C of section 1803 which, if it occurs, may be overridden upon reconsideration by the legislature only by a two-thirds majority vote (Charter, § 1803, subd C).

Read together, the applicable Charter provisions compel the conclusion that the framers intended to vest in the County Executive broad powers in financial matters. He is named "chief budget officer" (Charter, § 302, subd d) with power to appoint the budget director who serves at his pleasure as a part of his office and assists him in carrying out the responsibility that is his alone — that of administering the operating budget (Charter, § 305). While the legislature is vested with the power to mandate expenditures by making supplemental and emergency appropriations and by adopting the budget after adding items to it, this power is subject to executive veto. From the foregoing, the fundamental concept underlying the intended division of powers in financial matters emerges: the executive is to be the sole overseer of expenditures of budgeted funds during the fiscal year while the legislature and the executive (through the exercise of the veto) together determine what moneys shall be spent and for what purpose.

■ Accepting this as a valid understanding of the intended separation of legislative and executive powers in financial matters, the question becomes whether the authority granted to the executive in subdivision e of section 3.09 of the Administrative Code is in harmony with and consistent with that perception. An answer requires us to examine the nature of the power to certify (or not to certify) the necessity of filling vacancies arising during the fiscal year. This is not a power to revoke a budgeted appropriation, to abolish a position or to refuse to fill or to authorize compensation for positions which have been approved in the budget but which are unfilled at the beginning of the fiscal year. It is an interim power which the legislature has given the executive to oversee and check expenditures with

respect to vacant positions which occur during the budgeted year. It does not alter the number of positions approved for an office or department, and the positions (if not certified as necessary to be filled) remain vacant only until the next fiscal year commences when the total number of positions for the office or department will have been approved by the legislature in that year's budget. The responsibility under subdivision e of section 3.09 of the Administrative Code is that of deciding, when a particular position becomes vacant during the fiscal year, whether the need for a person in a specific job title is such that efficient functioning of the concerned office or department requires that the position be refilled before the year ends. The duty of evaluating the need for a specific position and balancing that against the savings that would otherwise accrue if it remained unfilled for the balance of the year, we conclude, falls within the powers and responsibilities granted to the County Executive as "chief executive officer and administrative head of the county government" (Charter, § 302, subd a) and "chief budget officer of the county" (Charter, § 302, subd d). The power the legislature has given the executive in subdivision e of section 3.09 of the Administrative Code is in harmony and consistent with the Charter, and the section is therefore valid. It follows then that what the legislature has lawfully delegated under subdivision e of section 3.09 of the Administrative Code cannot amount to an unconstitutional delegation of legislative power or effect an unlawful encroachment on the prerogative of the legislative branch.

One other argument we address briefly: that section 3.09 of the Administrative Code curtails the powers of duly elected officials (i.e., the power of the comptroller to appoint persons to positions in her office and the power of the legislators to approve the number of positions in an office or department in their adoption of the budget) and thus required approval in a referendum (Charter, § 2002; Municipal Home Rule Law, § 23, subd 2, par f). As stated above, there is no direct interference with the right of the comptroller to appoint persons to positions in her office or with the right of the legislature to make appropriations and to approve positions in the budget. The code provision

does not give the executive the right to make appointments. Neither does the withholding of permission to fill a vacancy under subdivision e of section 3.09 of the Administrative Code affect the legislature's power to approve a specified number of positions. Nor can it be said that the code provision transfers to the executive powers under the Charter that were *impliedly* in the sphere of the comptroller or the legislature. The powers of the comptroller to appoint persons to the positions approved for her office and of the legislature to approve the number of positions for that office do not, by implication, include any guarantee that the positions will remain filled throughout the fiscal year. On the contrary, the powers of the comptroller and legislature have, since the adoption of the Charter, been subject to the reach of the power granted to the executive in the same Charter as chief administrative and budget officer, which, we hold, is broad enough to include the right to approve the filling of interim vacancies. Subdivision e of section 3.09 of the Administrative Code transfers from other branches to the executive no additional authority but merely "set[s] forth the details" as directed by subdivision c of section 202 of the Charter of how the executive shall function within the limits of power already granted to him. Therefore, subdivision e of section 3.09 of the Administrative Code effected no abolition, curtailment or transfer of the powers of the comptroller or the legislators and no referendum was necessary (Municipal Home Rule Law, § 23, subd 2, par f). What the Charter has never given, the code cannot have taken away.

In view of the foregoing, it is apparent that neither of the cases relied on by petitioner is in point. *Matter of County of Oneida v Berle* (49 NY2d 515) involved an overriding by executive fiat of an appropriation properly approved, a matter clearly not involved here. Because we interpret the power conferred by subdivision e of section 3.09 of the Administrative Code as applying only for the duration of a given fiscal year, we are not concerned with the power effectively to abolish a position by keeping it vacant perennially, a power disapproved in *Matter of Henry v Noto* (74 AD2d 604, mod 50 NY2d 816, *supra*) (see n 3, *supra*).

■ For the reasons stated at Special Term, we hold that petitioner should be reimbursed for reasonable attorney's fees (see *Cahn v Town of Huntington,* 29 NY2d 451). She has concededly brought the proceeding in her official capacity, and we have held that it involves "substantial questions of public interest which are likely to recur". The case does not involve an internal dispute between lower echelon officials as in *Moffatt v Christ* (74 AD2d 635, affd 51 NY2d 806), relied on by respondents. Moreover, petitioner's good faith is unquestioned (see *Cahn v Town of Huntington, supra,* p 456, n 4). Under the circumstances presented, where the respondents include the highest officials in Erie County government, it would, as Special Term has concluded, have been pointless to insist that petitioner "go through the motions of requesting representation from the county attorney."

The judgment should in all respects be affirmed.

DILLON, P. J., DOERR, DENMAN and MOULE, JJ., concur.

Judgment unanimously affirmed without costs.