OPINION OF THE COURT
Alexander, J.
The common issue presented for our review in these three cases concerns the Suffolk County Executive’s power to impose a hiring freeze during the 1990 fiscal year upon the County Comptroller, the County Clerk and the District Attorney such as to prevent the filling of vacancies in the offices of each of *121 these officials. We conclude that the County Executive, as the Chief Executive Officer and Chief Budget Officer of Suffolk County as provided in the County Charter and Administrative Code, was empowered to take such actions not inconsistent with the charter and code as were necessary to fulfill his responsibilities, including imposing a hiring freeze. Thus, we affirm in each of these proceedings.
I
The Suffolk County Charter constitutes the County Executive the Chief Executive Officer of the county and gives the executive general supervision over all administrative units of the county (see, Suffolk County Charter § C3-2 [A]). The charter also constitutes the County Executive the Chief Budget Officer of Suffolk County and as such, the County Executive is required to oversee generally, the preparation of the county budget and to submit a proposed budget to the county legislature (§ C4-6). The executive is also required by the Suffolk County Administrative Code to maintain a balanced budget throughout the year (Administrative Code § A4-8) and is required by the charter, upon determining that available revenues will be less than total amounts appropriated "[to] advise the County Legislature of the estimated amount of the deficit, the remedial action he has taken or plans to take under the allotment system and otherwise” (§ C4-27 [A]). It appears that Suffolk County employs an allotment system by which funds appropriated in each year’s operating budget are distributed to the various departments (§ C4-29). An appropriation authorized for any department is not available for spending, however, unless the County Executive approves an allotment of funds for the department or a requested allotment otherwise becomes effective under the Administrative Code (§ C4-29).
Where the County Executive determines that a deficit is likely to occur because the total revenues will be less than the total appropriations for the year, the Administrative Code authorizes the executive to "reconsider the work programs and allotments of the several departments and make a revision thereof to prevent expenditures in excess of the amounts available therefor” (§ A4-8). The Administrative Code further provides that the County Executive may alter any requested allotment unilaterally by as much as 10%. He may also alter any such allotment by more than 10% provided he advises the county legislature in writing of the alteration and his reasons *122 for the alteration. Such alteration will take effect unless within 10 days of the receipt of the notice, the legislature, by a two-thirds vote, passes a resolution declaring that the proposed revision shall not take effect (§ A4-7 [A], [B] [1], [2]).
Anticipating a 1990 budget deficit of an estimated 20 million dollars, on January 16, 1990, the respondent Patrick Halpin, the Suffolk County Executive, in his capacity as the Chief Budget Officer, issued a memorandum to all department heads calling for an interim spending reduction plan, including a general hiring freeze. A few days later, he notified the Suffolk County Legislature of his action. On March 13, 1990 he submitted to the legislature a detailed plan for spending reduction measures, including a five-day voluntary/mandatory furlough, an early retirement program, personnel layoffs and departmental appropriation reductions.
In the meanwhile, petitioners Joseph Caputo, the Suffolk County Comptroller, and Edward Romaine, the Suffolk County Clerk, sought to fill vacancies for budgeted positions in their respective offices. The record indicates that a method of budget control had been established during a previous administration which precluded filling vacant positions in county government without the written approval of the County Executive. The purpose of this system is to enable the County Executive, as Chief Budget Officer, to verify the existence of an appropriation to pay the proposed employee, to assure that certain savings are being met by the requesting department and to determine that the hiring will not cause the department to overrun its budget at the end of the year. To implement this system, a form designated "SCIN Form 167” had to be filed with the County Executive for approval of the proposed hirings.
When the County Executive refused to approve filling the budgeted vacancies by executing the SCIN forms submitted by the County Clerk and the Comptroller, they each instituted a CPLR article 78 proceeding in which they sought to compel the County Executive to execute the forms, and a declaration that the County Executive lacked the power and authority to require the filing of the SCIN form and his approval thereof as a condition to filling vacancies of budgeted positions in their departments. They also sought attorneys’ fees because they were compelled to hire private counsel because the County Attorney was representing the County Executive.
In separate decisions and orders, Supreme Court granted *123 the petitions in both proceedings, directed the County Executive to execute and approve the SCIN 167 Forms, declared that the Comptroller and County Clerk had the absolute right to appoint any qualified individual to vacant positions and awarded attorney fees. The court also determined that the County Executive did not have the power to unilaterally impose a hiring freeze.
Upon the appeal of the County Executive, the Appellate Division, in separate opinions and orders, modified, on the law, Supreme Court’s orders and judgments, by deleting the portions directing the County Executive to execute the forms and the declaration that the Comptroller and County Clerk had an absolute power of appointment, dismissed the first and second causes of action but left standing the determination that the Comptroller and County Clerk were entitled to attorneys’ fees. The Appellate Division concluded that in order to affect the budget appropriations of various departments, the County Executive "must follow the procedure laid down in the allotment system prescribed by the Suffolk County Charter and the Suffolk County Administrative Code as well as the procedure where a budget deficit is anticipated” (Matter of Caputo v Halpin, 160 AD2d 938, 939 [citations omitted]). The court found that the County Executive’s January 16, 1990 memorandum "did not constitute effective action under the allotment system to give the County Executive the power to refuse to approve the filling of vacancies” (id.) but determined, however, that the County Executive’s refusal to fill the vacancies as requested by the Comptroller and County Clerk was merely a "delay in contemplation of the submission of a detailed plan to the County Legislature to avoid the anticipated budget deficit. This plan involved not filling vacancies for which there were budget appropriations as one means of achieving a savings.” (Id., at 939.) The court concluded that such a delay was well within the power of the County Executive, who as the Chief Budget Officer was the "overseer of expenditures of budgeted funds” (id., at 940). After Supreme Court determined the amount of attorneys’ fees, this Court granted the Comptroller and County Clerk leave to appeal pursuant to CPLR 5602 (a) (1) (ii) from the judgments of Supreme Court, bringing up for review the prior nonfinal Appellate Division orders.
We also granted leave to appeal to the Suffolk County District Attorney, James Catterson, whose challenge to the County Executive’s refusal to approve two appointments to his *124 staff was rejected by the Appellate Division. In the March 13, 1990 spending reduction plan submitted to the legislature by the County Executive, $243,866 in savings were targeted for the District Attorney’s office for fiscal year 1990. However, in April 1990, the District Attorney’s office failed to meet its targeted savings and in fact spent in excess of the total amount appropriated in the 1990 budget. Consequently, in May, the County Executive imposed a freeze on hiring in the District Attorney’s office pending demonstration by the District Attorney that the targeted savings in the departmental reduction plan could be met.
In June, Catterson made two appointments to his staff but was unable to have them placed on the county payroll because of the freeze. Catterson and the prospective employees successfully challenged the County Executive’s freeze in a CPLR article 78 proceeding in Supreme Court. That court determined that the County Executive was not authorized to interfere with the District Attorney’s appointments to vacant, budgeted positions and directed the County Executive to place the two employees on the payroll. The court also awarded attorneys’ fees to the District Attorney and the prospective employees.
The County Executive appealed and the Appellate Division modified, on the law, Supreme Court’s decision and order by deleting those portions of the order which directed the County Executive to place the appointees on the payroll and determined that the County Executive could not freeze vacant and budgeted positions in the District Attorney’s office. It concluded that although the County Executive did not have "unfettered discretion to refuse to place names on the Suffolk County payroll where budgetary appropriations already [had] been made * * * the Suffolk County Allotment System [as provided for in the Suffolk County Charter and Administrative Code] combined with the Suffolk County Executive’s duty to avoid budget deficits * * * support the conclusion that the Suffolk County Executive may institute a temporary hiring freeze as a method of preventing the District Attorney’s office from expending money at a rate which would deplete its budget well before the end of its fiscal year” (167 AD2d 341, 342 [citations omitted]).
II
On their appeal to this Court, the Comptroller, County *125 Clerk and District Attorney argue that the County Executive’s refusal to certify the subject appointments impermissibly interferes with their respective powers to appoint qualified persons to budgeted positions in their departments. They contend that because the County Charter and Administrative Code grant them the power to appoint personnel, the County Executive, in order to limit that power, must point to a law of equal import and dignity granting him the authority to override those powers, which they contend, he cannot. Specifically, they argue that neither the County Charter nor the Administrative Code grants him an express power to delay the processing of SCIN forms in contemplation of preparing a spending reduction plan. Although the specific provision appellants describe is not contained in the Suffolk County Charter or Administrative Code, we deem the express powers granted the County Executive in the County Charter and Administrative Code more than sufficient to support our determination that the County Executive has the authority to order hiring freezes.
We had occasion to consider the primary argument appellants raise here in Matter of Slominski v Rutkowski (91 AD2d 202 [Hancock, Jr., J.], mod on other grounds and affd 62 NY2d 781) which involved similar circumstances. Slominski arose out of the Erie County Executive’s refusal to certify positions to fill vacancies in the Erie County Comptroller’s office. The County Comptroller attacked the validity of section 3.09 (e) of the Erie County Administrative Code which provided that " '[e]xcept in the legislative or judicial branch, no appointive county office or position which hereafter becomes vacant shall be filled until the county executive has certified in writing to the county legislature the necessity of filling the same.’ ” (Id., at 203.) The decisive issue was whether that provision was consistent with provisions in the Erie County Charter. The provisions in that charter were similar to those in the Suffolk County Charter and Administrative Code inasmuch as the Erie County Executive was also deemed the Chief Executive Officer, the administrative head of the county government and Chief Budget Officer of the county. He had considerable veto powers with respect to budgetary decisions of the Erie County Legislature. Thus, we affirmed the Appellate Division’s determination that the powers the County Charter granted the County Executive, as the county’s Chief Executive and Budget Officer, were "broad enough to include the right to approve the filling of interim vacancies” (id., at 211) and agreed with *126 its ultimate conclusion that section 3.09 (e) was consistent with those powers.
Appellants assert, however, that Slominski is not controlling because it involved an express provision granting the County Executive the authority to order temporary hiring freezes whereas here, no similar provision exists. We reject this argument and conclude that the rationale of Slominski is equally applicable here. There, the County Executive’s responsibilities and corresponding powers were deemed sufficiently broad to support the determination that the decision to order a hiring freeze was not beyond the County Executive’s authority. The very broad powers granted the Suffolk County Executive are sufficiently similar to those granted the Erie County Executive in Slominski to render that case essentially indistinguishable (cf., Matter of Slominski v Rutkowski, 91 AD2d 202, 206-209, supra).
Appellants also contend, relying on our decision in Matter of Henry v Noto (50 NY2d 816), that the County Executive effectively abolished the vacant positions which they sought to fill and thus, his actions were improper. Their reliance on Noto, however, is misplaced. Contrary to petitioners’ assertion, the County Executive did not abolish the positions at issue here but merely temporarily extended the time period during which the positions would remain unfilled.
In Noto, a Suffolk County resolution empowered the County Executive to approve of the need to fill vacancies in the District Attorney’s office. We concluded that such a resolution impermissibly encroached upon the power of the District Attorney to appoint assistants. As we noted in Slominski, however, the resolution in Noto gave the County Executive the power to effectively abolish positions in the District Attorney’s office (Matter of Slominski v Rutkowski, 62 NY2d, supra, at 784). No such power or encroachment is involved here, however. The County Executive has made no attempt to abolish the positions at issue here nor to encroach upon appellants’ powers of appointment. He merely seeks to temporarily delay the filling of vacancies for a particular fiscal year because of budgetary shortfalls and overspending.
Appellants’ reliance on Matter of County of Oneida v Berle (49 NY2d 515) is equally unavailing. In Berle we "recognized the Governor’s constitutional obligation to propose a balanced budget,” but there had been no suggestion that "once a budget *127 plan is enacted, revenues and expenditures must match throughout the fiscal year.” (Id., at 521.) By contrast, here, the County Executive is specifically charged with the responsibility of maintaining a balanced budget and is required to take necessary and appropriate steps to discharge that responsibility.
The District Attorney also contends that because he is a constitutional and State official with a unique place in the criminal justice system, the County Executive may not refuse to place persons on the county payroll whom the District Attorney has appointed. That argument is without merit. As we noted in Matter of Kelley v McGee (57 NY2d 522, 534), "recent constitutional developments have operated to remove [the office of District Attorney] from its previous constitutional stature and that a District Attorney may no longer properly be considered a State officer.” Thus, with regard to the issue presented here, the District Attorney has no greater rights in comparison to the County Executive than do the County Clerk and County Comptroller.
Finally, the District Attorney contends that the hiring freeze was not justified because the projected shortfall in his office of approximately $250,000 was eliminated by receipt of additional revenues. The "additional revenues” to which the District Attorney refers were funds received by his office from the New York State Organized Crime Task Force. Although the District Attorney’s office served as the receiver of these funds, they were credited to and placed in the county’s general fund and thus should not be considered additional revenues attributable to the District Attorney’s budget.
Accordingly, in Matter of Caputo v Halpin and Matter of Romaine v Halpin, the respective judgments of Supreme Court and orders of the Appellate Division brought up for review should be affirmed, with costs. In Matter of Catterson v Halpin, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
In Matter of Caputo v Halpin and Matter of Romaine v Halpin: Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.
In Matter of Catterson v Halpin: Order affirmed, with costs.