OPINION OF THE COURT
Joseph R. Glownia, J.
Petitioners seek an order directing the respondents to permit the Common Council to effectuate a reallocation of $60,000 of funds entirely within the Council’s portion of the Buffalo City budget, which budget has been enacted.
On December 9, 1992, the Council, through the City Clerk, wrote the Budget Director requesting a $60,000 reallocation from account No. 573 — Engineering and Technical Services to account No. 112 — Temporary Services along with a $4,000 reallocation from account No. 573 aforesaid to account No. 449 — Miscellaneous. The intended transfer from Engineering and Technical Services to Temporary Services is to fund the Councilmen’s Summer Intern Program.
On or about December 17, 1992, the Budget Director authorized the $4,000 reallocation. However, by letter dated December 23, 1992, he refused to authorize the $60,000 request.
When petitioners subsequently directed the Comptroller to reallocate the funds, they were informed by letter dated January 11, 1993 that he could not do so because the budget office refused to take the procedural steps necessary.
It is unnecessary to address respondent’s argument that a Council resolution is a prerequisite to a suit brought by the Council as an entity because the petitioners (who comprise all but one member of the Common Council) bring this suit as individual members of the Council.
Respondents argue that petitioners as individual members are without standing to sue. However, they offer no argument to rebut the liberal policy of this State with respect to standing. In his Commentary on New York practice regarding *273 standing, Professor Siegel concludes by stating: "and with the Court of Appeals having acknowledged that in general 'standing’ is to be measured generously, the occasion for closing the court’s doors to a plaintiff by finding that his interest is not even sufficient to let him address the merits, which is what a 'standing’ dismissal means, should be infrequent. Ordinarily only the most officious interloper should be ousted for want of standing” (Siegel, NY Prac § 136, at 206 [2d ed]).
The Court of Appeals case referred to by Professor Siegel was Matter of Dairylea Coop. v Walkley (38 NY2d 6). In determining the plaintiff’s standing, the Court concluded that the plaintiff’s interest was "arguably” within the "zone of interest” to be protected by the statute involved, and held: "[o]nly where there is a clear legislative intent negating review * * * or lack of injury in fact * * * will standing be denied.” (Supra, at 11.)
As elected members of the Council, petitioners are within the "zone of interest”. There is clearly no legislative intent to preclude elected legislators from bringing such actions, and it cannot be said there is no injury in fact. The reallocation of funds in the Council’s own budget for the Summer Intern Program is a matter not only of direct concern to the Council, but also to individuals who comprise the Council and therefore, the petitioners have standing. To hold otherwise would require sending this matter back to be voted upon, then sued by the Council as an entity. This would exalt form over substance and serve no useful purpose.
Petitioners argue that pursuant to the Buffalo City Charter the Council has the sole authority to adopt its own budget and make reallocations within that budget.
Central to respondents’ argument is the applicability of section 40 of the Buffalo City Charter which reads as follows:
"Each department, division, city agency or other purpose shall be credited with the appropriation included in the budget for it. The appropriation for every function of each department, division, city agency or other purpose shall be a fixed item and the total expenditures for each such function shall not exceed the appropriation therefor as originally made or increased.
"The expenditures for the major objects included within each function shall not exceed the amount allocated therefor except that the director of the budget may approve in writing the reallocation of funds to or from any major object of *274 expenditure, including personal services, within the appropriation of every function of each department, division, city agency or other purpose and may allocate the amount of any increased appropriation in like manner; provided, however, that the total expenditures for all major objects within any function shall not exceed the appropriation for such function as originally made or increased.”
Respondents argue that the term "or other purpose” is inclusive of the Common Council and pursuant to section 40 such transfers must be approved in writing by the Director of Budget, which he has the authority to refuse.
Respondents argue that, by not specifically excluding the Council from the applicability of section 40, the Council must be included. That argument must fail. A reading of the Charter as a whole clearly indicates that where applicable this Charter refers to the Council by name. Section 11 of the Charter titled Legislative Power states: "The legislative power of the City is vested in the Common Council, referred to throughout this act as the Council” (emphasis added). Established principles of statutory construction would indicate that the failure to specifically include the Council by name indicates that its exclusion was intended (Pajak v Pajak, 56 NY2d 394 [1982]; Eastern Paralyzed Veterans Assn. v Metropolitan Transp. Auth., 79 AD2d 516 [1st Dept 1980], appeal dismissed 52 NY2d 895 [1981]).
Assuming, arguendo, that the Council is included within the applicability of this section by its terminology, or by a longstanding policy to submit such requests (evidenced by the letter of the City Clerk dated December 9, 1992 requesting this reallocation of funds), it still would be necessary to determine whether the Budget Director’s approval was discretionary as opposed to ministerial.
Although not reaching the issue in Matter of Whelan v Griffin (100 AD2d 742 [4th Dept 1984]), the Appellate Division offered some guidance on the nature of the authority given the Budget Director under section 40. In that case the City Comptroller sought to compel City officials, including the Budget Director, to take all necessary steps to allow him to fill existing vacancies in his office. At the center of the controversy was a long-standing policy requiring personnel requisitions to be submitted to the Budget Director for approval. There, the Budget Director refused to act upon the Comptroller’s personnel requisitions, claiming certain budget restraints. *275 The Court found that the Budget Director’s review of these requisitions pursuant to the policy set forth in petitioner’s own policy manual is a proper exercise of the Budget Director’s powers under the Buffalo City Charter and cited sections 40 and 295.8.
Under section 110 of the Charter the Comptroller is the head of the Department of Audit and Control and is therefore clearly within the categories itemized in section 40. The Court in Whelan (supra, at 743) went on to say: "[t]his power vested in the director, however, is not discretionary and there is no specific authority to support any contention that he is authorized to pass on the necessity or wisdom of filling vacant positions (cf., Matter of Slominski v Rutkowski, 91 AD2d 202, mot for lv to opp granted 60 NY2d 557).”
The Court concluded, therefore, that the Budget Director’s duties were ministerial, and that he may be compelled to perform them.
Slominski v Rutkowski (supra) is referred to in Whelan (supra) for comparison purposes and stands for the proposition that the executive branch may limit expenditures so long as such authority is specifically granted. In that case the Erie County Administrative Code gave specific authority to the County Executive to certify in writing the necessity of filling vacant positions.
As in Whelan (supra), no such specific authority is evidenced that the Budget Director has discretion to determine the wisdom of necessity of transfers within the Council’s budget. A comprehensive reading of the budget process under the City Charter would indicate otherwise. In Whelan, the Budget Director had to check that the personnel request did not exceed the salary ordinance and that salary requirements did not exceed appropriations. In this case, the Budget Director has merely to check for adequate appropriations in the account the funds are to be reallocated from and prepare the reallocation form.
The Council determines its own budget. The executive branch of City government is without authority to amend the Council’s budget estimates (see, Buffalo City Charter § 295.11). After the Council determines its own financial needs, the estimated amounts become the Council’s budget. Once the budget process is complete, as it is here, any action that would be required of the Budget Director within the reallocation process is purely ministerial.
*276 Judgment is granted directing the respondents to permit the Council to effectuate a $60,000 reallocation of funds in the Council budget from account No. 573 — Engineering and Technical Services to account No. 112 — Temporary Services.