[600 NYS2d 153]

In the Matter of MATTHEW T. CROSSON, as Chief Administrator of the Courts of the Unified Court System of the State of New York, Appellant, v EDWARD V. REGAN, as Comptroller of the State of New York, Respondent.

Third Department, July 8, 1993

### APPEARANCES OF COUNSEL

*Michael Colodner,* New York City *(Kenneth Falk* of counsel), for appellant.

*Robert Abrams, Attorney-General,* Albany *(Frank K. Walsh* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

In enacting a budget for the judiciary for fiscal year 1990-1991, the State Legislature sought to save $7 million from the judicial budget and to finance some requested new positions, by mandating a 10-day "lagged payroll" for nonjudicial employees of the Unified Court System to be accomplished over 10 payroll periods (L 1990, ch 190, § 375). Respondent implemented this legislation beginning November 7, 1990 through the next nine payroll periods, ending March 13, 1991, by paying the affected employees 9/10ths of the wages they would have otherwise received, until their salaries were fully lagged for 10 days. The legislation further provided that the lost salary would be repaid to each affected employee upon his or her termination of State employment.

The public employee unions representing the affected employees challenged the lagged payroll legislation in the Federal courts. In late July 1991, the United States Court of Appeals for the Second Circuit reversed the dismissal of that

challenge by the United States District Court for the Southern District of New York and ruled that the lagged payroll legislation was unconstitutional in infringing upon the rights of employees under their collective bargaining agreements with the State, in violation of the Contract Clause of the Federal Constitution (US Const, art I, § 10) *(Association of Surrogates & Supreme Ct. Reporters v State of New York,* 940 F2d 766, *cert denied* — US —, 112 S Ct 936). The matter was remanded to the District Court to enter judgment declaring the invalidity of the lagged payroll legislation and to provide for restitution of the lost salaries of affected court employees.

On August 29, 1991, the District Court ordered restitution of the lagged wages, plus interest, in the aggregate sum of $11.14 million. At the request of petitioner (and over the opposition of respondent and the Attorney-General), the District Court further ordered that the restitution payments be charged against unexpended funds of the judiciary's fiscal year 1990-1991 budget appropriation (772 F Supp 1412).

In compliance with the District Court's August 29, 1991 order, respondent deposited $11.14 million in a newly created special account, advising petitioner that, in his opinion, restitution should be charged to the judiciary's appropriation for fiscal year 1991-1992 because the liability was incurred in the 1991-1992 fiscal year. At the same time respondent appealed from the portion of the District Court's order directing that restitution be paid from the fiscal year 1990-1991 appropriation. In October 1991, restitution plus interest was made to the affected employees from the funds in the special account.

In early June 1992, the Second Circuit agreed with respondent that it was error for the District Court to direct that the restitution payments be made out of the judiciary's fiscal year 1990-1991 appropriation *(see, Association of Surrogates & Supreme Ct. Reporters v State of New York,* 966 F2d 75). The Second Circuit ruled that because of the very nature of the lagged payroll scheme, the actual shortfall in pay ultimately in fact occurred in fiscal year 1991-1992; thus, the liability of the State was incurred in that fiscal year, not in fiscal year 1990-1991 *(see, supra,* at 78-79). The court construed State Finance Law § 40 (2) (a) as mandating that, under those circumstances, restitution had to come from the judiciary appropriation for fiscal year 1991-1992 *(supra,* at 78-79). Accordingly, the court vacated that portion of the District Court's order directing that the repayment of the lagged funds be charged to the judiciary's fiscal year 1990-1991 surplus. On

June 10, 1992, without consulting petitioner, respondent charged the $11.14 million theretofore paid out in restitution to the judiciary's 1991-1992 unencumbered fiscal appropriation, debiting various specific accounts.

The final element of the procedural backdrop of this appeal was the decision of the Second Circuit on petitioner's application for a rehearing *(Association of Surrogates & Supreme Ct. Reporters v State of New York,* 969 F2d 1416). The application was granted only to the extent of deleting the portion of the Second Circuit's previous opinion in which the court concluded that State Finance Law § 40 (2) (a) required restitution to be made from the fiscal year 1991-1992 judiciary appropriation, because it was "unnecessary for us to opine from which [fiscal year's] appropriations restitution should be made" *(id.,* at 1418).

On September 8, 1992, petitioner commenced this proceeding challenging respondent's unilateral act of charging the restitution payments to lagged court employees to the fiscal year 1991-1992 judiciary appropriation. On September 14, 1992, petitioner obtained provisional relief from this Court requiring respondent to set up a special account from the fiscal year 1991-1992 appropriation which "shall not lapse on September 15, 1992 pursuant to State Finance Law § 40 (3), but shall continue to have force and effect * * * pending the hearing and determination of the petition". Under State Finance Law § 40 (2) (a), an appropriation made by the Legislature in a given fiscal year expires and reverts to the general State treasury at the close of that fiscal year "except as to liabilities already incurred thereunder". With respect to an appropriation which survives the end of the fiscal year because of being burdened with "liabilities already incurred thereunder", State Finance Law § 40 (3) provides that the appropriation continues in force and effect until the September 15 after the close of the fiscal year in which the appropriation was made, "on which date such appropriation shall lapse". Thus, the provisional order was designed to prevent the lapse of an unexpended $11.14 million of the judiciary's 1991-1992 appropriation on September 15, 1992 and the reversion of that sum to the State treasury as unallocated funds.

Petitioner's position before Supreme Court and on appeal is that the liability of the judiciary to pay restitution for the lagged salaries was incurred in fiscal year 1991-1992, as determined by the Second Circuit. Therefore, it was indeed permissible for respondent to charge it to the judiciary's

appropriation for fiscal year 1991-1992, as he did on June 10, 1992, despite the termination of that fiscal year on March 31, 1992 *(see,* State Finance Law § 40 [3]). Petitioner further points out, however, that by June 10, 1992 when respondent made the charge against the judiciary appropriation for fiscal year 1991-1992, the fiscal year 1992-1993 appropriation was already in effect, and the budget bill creating that appropriation specifically provided that the fiscal year 1992-1993 appropriation could be used for "the payment of liabilities incurred prior to April 1, 1992" (citing L 1992, ch 51, § 2). Therefore, according to petitioner, on June 10, 1992 the judiciary's fiscal year 1992-1993 appropriation could also have been charged with the restitution payment, and it was within the constitutional prerogative of the judicial branch of government, not of respondent, to determine which of these two available appropriations to use as the source of the restitution payments. Supreme Court rejected this contention, concluding that the lagged payroll restitution was properly charged against the judiciary's fiscal year 1991-1992 appropriation (153 Misc 2d 534). The court, however, ruled that respondent was obligated to consult with petitioner before charging individual unexpended account balances within that appropriation. Respondent has not appealed from the latter determination.

Thus, the sole issue before us is the propriety of respondent's unilateral charge of the lagged payroll restitution payments to the judiciary's fiscal year 1991-1992 appropriation. We have concluded that respondent acted properly and within his constitutional power to audit all claims against the State and "all official accounts" (NY Const, art V, § 1; *see, City of New York v State of New York,* 40 NY2d 659, 667; *People ex rel. Grannis v Roberts,* 163 NY 70, 78). Petitioner's contrary argument is dependent upon the assumption that the restitution payments made to court employees beginning in late September 1991 somehow gave rise to a liability the judiciary owed to the State, a proposition for which petitioner cites no authority. The only cognizable liability in this proceeding was the liability to lagged court employees imposed by the Federal courts. This liability concededly arose in fiscal year 1991-1992 and was paid in that same fiscal year by respondent in compliance with the order of the District Court. The only task remaining was the performance of respondent's paradigmatic function of *accounting* for that payment. Clearly, at the time the required restitution was actually made in October 1991, the only valid charge was against the judiciary's appropriation

for fiscal year 1991-1992. The appropriation for fiscal year 1990-1991 could not be used as that fiscal year had closed March 31, 1991. Even if the liability to lagged court employees had been incurred in fiscal year 1990-1991 (which it was not), the fiscal year 1990-1991 appropriation lapsed as a matter of law on September 15, 1991, before the restitution payments were made *(see,* State Finance Law § 40 [3]).

It was only because of the District Court order (later reversed *[see, Association of Surrogates & Supreme Ct. Reporters v State of New York,* 966 F2d 75, *supra])* that respondent was prevented, at the time restitution was made, from transferring to the general State treasury the lapsed $11.14 million of the fiscal year 1990-1991 judiciary budget in the special account, and from charging the judiciary's fiscal year 1991-1992 appropriation. Moreover, when the restitution payments were actually made in October 1991, they could not have been charged against any fiscal year 1992-1993 appropriation, as urged by petitioner, because that appropriation had not yet been enacted. The State is constitutionally prohibited from making any payment except out of an existing appropriation *(see,* NY Const, art VII, § 7; *see also, Anderson v Regan,* 53 NY2d 356, 359). Thus, respondent's act in charging the restitution payments to the fiscal year 1991-1992 judiciary appropriation merely reflected the correct charge that would have been required at the time of the payment, had respondent not been prevented from doing so by the District Court's order. Respondent's act was, therefore, valid and not in violation of any constitutional prerogative of the judicial branch.

MIKOLL, J. P., YESAWICH JR. and CREW III, JJ., concur.

Ordered that the judgment is affirmed, without costs.